196 F.3d 102 (2nd Cir. 1999)
 CHARLES E. MORRIS, Consolidated-Plaintiff-Counter-Defendant-Appellant,
ROBERT L. PAVONE, Plaintiff-Counter-Defendant-Appellant-Cross-Appellee,
ROBERT A. PAVONE, Plaintiff-Counter-Defendant-Appellant,
THOMAS P. DIANA, PETER J. MACALUSO, SUSAN M. WHITMORE, JERRY P. UNDERWOOD, TIMOTHY J. KALB, VINCENT I. PAGLIAROLI, ANTHONY C. RAO, WARREN BONDS, JAMES CHRISTOPHER CRESCENZO, ROSE ORLANDO, THERESA LOWERY, MARY SCHNITTERT, Plaintiffs-Counter-Defendants-Appellants-Cross-Appellees,
VINCENT NYBERG, Individually, Consolidated-Defendant,
KATHRYN I. MCGUIRE, HENRY REINHARDT,
Plaintiffs-Counter-Defendants,
v.
ANN LINDAU, Individually, FRANCIS X. FARRELL, Individually, LINDA D. PUGLISI, Individually, TOWN BOARD OF THE TOWN OF CORTLANDT, THE BOARD OF POLICE COMMISSIONERS OF THE TOWN OF CORTLANDT, THOMAS WOOD, Individually, Defendants-Counter-Claimants-Appellees-Cross-Appellants,
THE TOWN OF CORTLANDT, NEW YORK, Defendant-Counter-Claimant-Appellee.
 Docket Nos. 98-7082, 98-7128
August Term, 1998
 UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
 Argued: November 5, 1998
Decided: October 21, 1999
 
 Plaintiffs appeal in three consolidated civil rights actions, Pavone v. Lindau, 96 Civ. 4993 (S.D.N.Y. Dec. 17, 1997); Pavone v. Puglisi, 96 Civ. 6776 (S.D.N.Y. Dec. 17, 1997); and Morris v. Wood, 96 Civ. 6513 (S.D.N.Y. Dec. 17, 1997), from a grant of summary judgment on December 17, 1997 in the United States District Court for the Southern District of New York (Brieant, J.) in favor of defendants, the Town of Cortlandt and its Supervisor, Attorney, and members of its Town Board. Defendants in Pavone v. Puglisi, 96 Civ. 6776, cross-appeal from the award of attorneys' fees to plaintiffs.
 Affirmed in part, reversed in part, and remanded.[Copyrighted Material Omitted][Copyrighted Material Omitted][Copyrighted Material Omitted]
 JONATHAN LOVETT, White Plains, New York (Craig T. Dickinson, Lovett & Gould, White Plains, of counsel), for Consolidated-Plaintiff-Counter-Defendant-Appellant.
 DANIEL RIESEL, New York, New York, (Lemuel M. Srolovic, Sive, Paget & Riesel, P.C., New York, New York, of counsel), for Defendants-Counter-Claimants-Appellees-Cross-Appellants.
 Before: KEARSE, CARDAMONE, and POOLER, Circuit Judges
 CARDAMONE, Circuit Judge:
 
 
 1
 This litigation had its origin in the discord engendered by a falling out between the elected officials of the Town of Cortlandt, New York and its Police Chief, who enjoys civil service tenure, regarding the budget and administration of the Town's Police Department. The residual bitterness was quickly evidenced in litigation that resulted in the three consolidated civil rights actions, brought under 42 U.S.C. 1983, now before us.
 
 
 2
 Plaintiffs Robert L. Pavone, Robert A. Pavone (Pavone, Jr.) and various employees of the Town Police Department appeal from a December 17, 1997 order of the United States District Court for the Southern District of New York (Brieant, J.) that granted summary judgment in plaintiffs' civil rights suits in favor of defendants, the Town Supervisor, Linda D. Puglisi, Town Board members Ann Lindau and Francis X. Farrell, and the Town Attorney, Thomas Wood, all individually, and the Town of Cortlandt, the Town Board of Cortlandt, and the Board of Police Commissioners of Cortlandt. Plaintiff Charles E. Morris appeals from the same order that granted summary judgment in his civil rights action in favor of defendants Wood, Puglisi, and the Town's Director of Code Enforcement, Vincent Nyberg, individually, and the Town of Cortlandt. Various other claims brought pursuant to 42 U.S.C. 1985 and 1988 are also before us. In their complaints plaintiffs sought several forms of relief including compensatory and punitive damages, declaratory and injunctive relief, and attorneys' fees.
 
 BACKGROUND
 
 3
 The Town of Cortlandt, a populous town in Westchester County, New York, established a Police Department (Department) in 1982 and plaintiff, Robert L. Pavone, was appointed its first Chief. Defendant Linda Puglisi has been the elected Town Supervisor since 1992. A heated public debate arose between Pavone and a majority of the Town Board, including Supervisor Puglisi and Town Board members Ann Lindau and Francis Farrell, regarding the administration and management of the Police Department. The dispute resulted in Pavone initiating a federal civil rights suit in 1994 alleging that the Town Board had violated his First and Fourteenth Amendment rights when it took retaliatory employment action against him in response to public statements he had made about the Department. See Pavone v. Puglisi, 94 Civ. 6140 (S.D.N.Y. filed Aug. 26, 1994) (Pavone I). This 1994 suit was settled later that year under an agreement that provided for its discontinuance, with prejudice, unless defendants brought disciplinary charges against Pavone within two years of the date of settlement. No such charges were filed.
 
 
 4
 However, the conflict between the parties over issues affecting the Police Department continued to escalate to such an extent that in 1996 Pavone and his son, Robert A. Pavone, Jr., brought another federal civil rights action against the Town asserting it had committed further retaliatory acts in response to Pavone's exercise of his right to speak out. See Pavone v. Lindau, 96 Civ. 4993 (S.D.N.Y. Dec. 17, 1997) (Pavone II).
 
 
 5
 Shortly after this second suit was initiated, the Town proposed abolishing the Department, in response to which Pavone and other Cortlandt Police Department employees initiated a third civil rights action. See Pavone v. Puglisi, 96 Civ. 6776 (S.D.N.Y. Dec. 17, 1997) (Pavone III). This suit alleged that abolition of the Police Department violated plaintiffs' rights because the action was taken in retaliation against protected speech by Pavone and other Department members. A fourth suit, brought by the Town's animal control and parking officer Charles Morris, in which he asserts he was treated in an unconstitutional manner by the Town Board for various forms of protected speech, including his support for Pavone, Morris v. Wood, 96 Civ. 6513 (S.D.N.Y. Dec. 17, 1997) (Morris), was consolidated with Pavone II and Pavone III into the present case.
 
 
 6
 At the time the district court granted defendants' motions for summary judgment, it appeared as though the Town in response to the filing of Pavone III had abandoned its plan to abolish the Police Department. But instead, since that ruling, the Town has implemented its plan to abolish the Town's Police Department by providing no funding for it in the budget that took effect on January 1, 1999.
 
 FACTS
 
 7
 All three civil rights suits allege that the Town Supervisor and members of the Cortlandt Town Board violated plaintiffs' constitutional rights by taking retaliatory steps against them in response to their public statements on the contentious debate over the administration of the Police Department. Plaintiffs in each case describe numerous events they maintain were motivated by a retaliatory animus. We describe them briefly.
 
 A. Pavone II and III
 
 8
 Plaintiffs first assert the Town Board abolished the Police Department in order to retaliate against Pavone and other members of the Department for engaging in protected speech. Plaintiffs point out that in a radio interview on September 5, 1996 Supervisor Puglisi said that as a result of the several lawsuits initiated by Pavone and other members of the Police Department she would pursue the abolition of the Department. Some record evidence supports plaintiffs' interpretation of this radio interview. A second assertion made by Pavone is that he was constructively demoted when the Town Board amended the procedures and policies of the Department in a manner intended to substitute the Town supervisor for the chief of police, and vest in the supervisor direct and absolute administrative control of the day-to-day operations of the Department.
 
 
 9
 Pavone next contends the Town Board adopted revised policies and procedures for the Department that reiterated an alleged "prior restraint" on his communication with the press. The policy states
 
 
 10
 With respect to your conduct at press conferences, other than for press conferences held to discuss an arrest or an accident situation, you are to advise us in advance as to the subject of any press conference that you are going to be calling and such notice shall be given to us prior to your notifying the press.
 
 
 11
 The complaint asserts that this policy was implemented in a manner that effectively served as a prior restraint on speech. In support of such assertion, it states that on June 18, 1996 defendant Lindau publicly and impliedly threatened Pavone with disciplinary action by announcing that he was "not following the direction[s] of the Town Board, one of which is not to talk to the press without getting permission." According to plaintiffs, on that same day, Lindau further explained that Pavone was not supposed to talk to the press unless he received clearance beforehand from defendant Puglisi or the Town Board. The complaint also charges that, in retaliation for Pavone's speech, Farrell, Lindau and Puglisi counseled and encouraged George Gottesman, a non-employee, to bring a personal injury suit against Pavone. As to Pavone, Jr., the complaint maintains that he was denied the opportunity to interview for a Police Department job in retaliation against his father's speech, thus violating the son's First and Fourteenth Amendment rights.
 
 
 12
 Some of the remaining allegations before us were part of Pavone I, which was discontinued by the 1994 Settlement Agreement, and are now therefore barred by res judicata. Further, some of the present allegations were left out of the complaint, were not addressed by the district court, or were de minimis acts not amounting to an adverse employment action. As such, these allegations do not warrant additional discussion.
 
 B. Morris
 
 13
 Turning to the factual assertions of the fourth suit, Morris alleges that defendants retaliated against him for publicly expressing his support for Pavone, for complaining about certain ticketing practices, and for filing a grievance with the Occupational Safety and Health Administration (OSHA). Defendants did this, he charges, primarily by transferring the Animal Control Division, of which he was an employee, from the Town Police Department to the Department of Code Enforcement, which he perceived as a less favorable position; and by discharging him without a pre-deprivation hearing. In addition, he complains his uniform color was changed from blue to brown and makes other similarly trivial complaints, for example, that he was no longer allowed to provide his voluntary armorer service to the Department. Morris contends all these alleged adverse employment actions were punishment for his speech.
 
 
 14
 Specifically addressing his discharge, Morris avers in addition that his August 1996 termination deprived him of a property interest in his civil service position without due process of law. Moreover, he declares that defendants labeled him as incompetent and incapable in a public statement to the press at the time of his firing, and that defendant Nyberg publicly accused him of being a liar.
 
 
 15
 From the grants of summary judgment against them, all of the plaintiffs appeal. We affirm in part and reverse in part and remand this case to the district court.
 
 DISCUSSION
 
 16
 The general legal standards under which we conduct de novo review of a district court's grant of summary judgment dismissing a complaint have been repeated often, so they need not be detailed here. We content ourselves with a statement that is particularly apt on this appeal: the moving party must show there are no material factual disputes; at the same time, the non-moving party may not rely simply on conclusory allegations or speculation to avoid summary judgment, but instead must offer evidence to show that "its version of the events is not wholly fanciful." D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998).
 
 
 17
 In Pavone II, Pavone contends that his First Amendment rights were violated when he was allegedly subjected to adverse employment actions by the Town in retaliation for his public statements regarding the budget and administration of the Police Department. He also asserts that certain statements made by defendants deprived him of his liberty interest in his reputation without due process of law. Pavone, Jr. maintains that he was denied an interview for a position with the Police Department because of his father's speech and that such denial violated his First and Fourteenth Amendment rights.
 
 
 18
 In Pavone III, Pavone and other members of the Police Department assert that the Town Board violated the First Amendment when it abolished the Police Department in response to their protected speech, and that defendants participated in a conspiracy in violation of 1985(2).
 
 
 19
 Charles Morris also contends in his suit that his First and Fourteenth Amendment rights were violated by various adverse employment actions and public statements of Town officials.
 
 I Legal Principles
 A. First Amendment Issues
 
 20
 The Supreme Court has held that "a public employee does not relinquish First Amendment rights to comment on matters of public interest by virtue of government employment." Connick v. Myers, 461 U.S. 138, 140 (1983) (citing Pickering v. Board of Educ., 391 U.S. 563, 568 (1968)). It also recognized that the state has an interest as an employer in regulating speech by employees so as to promote the efficiency of public services performed by its employees. See id. Acknowledging the wide variety of fact situations where critical statements by a public employee may be thought to furnish grounds for dismissal, the Supreme Court has declined to "lay down a general standard against which all such statements may be judged." Pickering, 391 U.S. at 569. Instead, to assess the extent to which a state may regulate the speech of its employees, courts must balance "the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." Id. at 568.
 
 
 21
 Before this balancing test is reached, a plaintiff making a First Amendment retaliation claim under 1983 must initially demonstrate by a preponderance of the evidence that: (1) his speech was constitutionally protected, (2) he suffered an adverse employment decision, and (3) a causal connection exists between his speech and the adverse employment determination against him, so that it can be said that his speech was a motivating factor in the determination. See Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 283-87 (1977) (Mount Healthy City). If a plaintiff establishes these three factors, the defendant has the opportunity to show by a preponderance of the evidence that it would have taken the same adverse employment action "even in the absence of the protected conduct." Id. at 287. We analyze the three factors more particularly.
 
 
 22
 1. Protected Speech. The question of whether certain speech enjoys a protected status under the First Amendment is one of law, not fact. See Connick, 461 U.S. at 148 n.7. Central to this inquiry is whether the speech may "be fairly characterized as constituting speech on a matter of public concern." Id. at 146. As a general rule, speech on "any matter of political, social, or other concern to the community" is protected by the First Amendment. Id.
 
 
 23
 2. Adverse Employment Action. Adverse employment actions include discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand. See Kaluczky v. City of White Plains, 57 F.3d 202, 208 (2d Cir. 1995) (citing Rutan v. Republican Party, 497 U.S. 62, 75 (1990)). The district court erred when it held that a plaintiff has not suffered an adverse employment action unless he or she has "suffered dismissal, reduction in pay, or demotion in rank," quoting language from the concurring opinion in Bernheim v. Litt, 79 F.3d 318, 327 (2d Cir. 1996). The majority opinion in Bernheim suggests, however, that lesser actions may also be considered adverse employment actions. 79 F.3d at 324-26 (adverse employment actions may include negative evaluation letters, express accusations of lying, assignment of lunchroom duty, reduction of class preparation periods, failure to process teacher's insurance forms, transfer from library to classroom teaching as an alleged demotion, and assignment to classroom on fifth floor which aggravated teacher's physical disabilities).
 
 
 24
 3. Causal Connection Between Speech and Adverse Employment Action. The causal connection must be sufficient to warrant the inference that the protected speech was a substantial motivating factor in the adverse employment action, that is to say, the adverse employment action would not have been taken absent the employee's protected speech. See Mount Healthy City, 429 U.S. at 287. Causation can be established either indirectly by means of circumstantial evidence, for example, by showing that the protected activity was followed by adverse treatment in employment, or directly by evidence of retaliatory animus. See Sumner v. United States Postal Serv., 899 F.2d 203, 209 (2d Cir. 1990). Summary judgment is precluded where questions regarding an employer's motive predominate in the inquiry regarding how important a role the protected speech played in the adverse employment decision. See Piesco v. City of New York, 933 F.2d 1149, 1155 (2d Cir. 1991).
 
 B. Immunities
 
 25
 We recognize at the outset, of course, that local legislators, sued in their personal capacities under 1983, are entitled to absolute immunity from suit for their legislative activities. See Bogan v. Scott-Harris, 118 S. Ct. 966, 970 (1998). The act of voting for an ordinance is "quintessentially legislative." Id. at 973. However, Board members sued in their personal capacity enjoy only qualified immunity for their executive actions, for instance, in those situations in which they administer a Town policy. See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).
 
 
 26
 Plaintiffs also named the Town Board, the Board of the Police Commissioners of the Town, and the Town itself as defendants. The immunities Town Board members enjoy when sued personally do not extend to instances where they are sued in their official capacities. In other words, municipalities have no immunity defense, either qualified or absolute, in a suit under 1983. See Goldberg v. Town of Rocky Hill, 973 F.2d 70, 74 (2d Cir. 1992). However, a municipality's liability under 1983 cannot be based upon the principle of respondeat superior. See id. at 72. Instead, a municipality can be held liable only if the alleged unconstitutional action implements an official "policy or custom [of the municipality], whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." Monell v. Department of Soc. Servs., 436 U.S. 658, 694 (1978). Once such a policy is found, the municipality may be sued directly under 1983 for monetary, declaratory or injunctive relief. See id. at 690.
 
 II Retaliation Claims - Pavone II and III
 
 27
 A. Termination Resulting From the Abolition of the Police Department
 
 
 28
 The comments of Pavone and other Department members, which included speech on crime rates, police staffing, equipment shortages and related budgetary matters quite plainly involve matters of public concern. Thus, these public utterances enjoy a constitutionally protected status. See Connick, 461 U.S. at 146. Termination also obviously qualifies as an adverse employment action. The critical question therefore is whether the abolition of the Town of Cortlandt's Police Department was substantially motivated by Pavone's and other Department members' protected speech. This causal connection may be difficult to prove because the defendants doubtless will maintain that the Department was abolished for fiscal reasons. Plaintiffs may not rely on conclusory assertions of retaliatory motive, but must offer instead some tangible proof to demonstrate that their version of what occurred was not imaginary. We think plaintiffs did just that in offering Supervisor Puglisi's radio interview of September 1996. Since all factual inferences on a motion for summary judgment must be drawn in favor of the non-moving party, a genuine issue of material fact exists as to the motivation behind the Board's abolition of the Town's Police Department. See Piesco, 933 F.2d at 1155.
 
 
 29
 Because the abolition occurred after its ruling, the district court did not rule on this issue. Additionally, because the plan to abolish seemed to have been abandoned when the trial court ruled, it held that the claims for injunctive relief in Pavone III were moot. Since the abolition has now occurred, these claims are no longer moot, and should be ruled upon on remand. Further, on remand, the appropriateness of summary judgment should be analyzed under the principle that summary judgment is inappropriate when "questions of motive predominate" in the inquiry about the role the protected behavior played in the employment decision. Piesco, 933 F.2d at 1154-60.
 
 
 30
 Being absolutely immune for their legislative acts, the Town Board members cannot be found personally liable for the abolition of the Police Department. But plaintiffs also named the Town as a defendant. The elimination of the Police Department, a legislative act passed by the Town Council, qualifies under Monell as a municipal act for which the Town may be held liable. See Goldberg, 973 F.2d at 72 (municipality could be held liable where, allegedly in retaliation for protected speech, the positions of supernumerary police officers were eliminated through a budgetary resolution). Although plaintiffs' complaints ask for various forms of relief, including both compensatory and punitive damages, punitive damages may not be awarded against a municipality. See City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981). Hence, were plaintiffs to demonstrate on remand that the abolition of the Police Department constituted a First Amendment violation, relief would be limited to compensatory, injunctive and declaratory relief.
 
 B. Constructive Demotion
 
 31
 A demotion is also an adverse employment action. See Kaluczky, 57 F.3d at 208. As the district court observed, however, several amendments to the Town procedures allegedly substituting the Supervisor for the Chief of Police, which Pavone asserts constructively demoted him, occurred in a 1993 resolution deemed to be part of the 1994 Settlement Agreement resolving Pavone I. Those claims are therefore precluded by res judicata, the doctrine that prevents a party from litigating any issue that could have been raised in a previous suit - where the parties and subject matter are the same - based on the same or a connected series of events. See Woods v. Dunlop Tire Corp., 972 F.2d 36, 38 (2d Cir. 1992).
 
 
 32
 Pavone also bases his claim of constructive demotion on a 1996 memorandum by the Board of Police Commissioners mandating certain procedures and deeming the Town Supervisor "responsible for the day to day operations of all departments of the Town, including the Police Department . . . you [Pavone] are to coordinate all activities with the Town Supervisor and to follow the directions of the Town Supervisor." We are unwilling to hold that for the Board in charge of a department to insert a supervisor over an employee necessarily constitutes constructive demotion of that employee. Further, the Town Supervisor was originally substituted for the Chief of Police in 1993 and so res judicata bars any issues raised by the 1993 changes. However, res judicata does not bar the question of whether Pavone's authority was further reduced in 1996.
 
 
 33
 Defendants have offered evidence that Pavone's job did not substantially change as a result of the 1996 resolution and that Pavone in fact retained control over the Police Department. As an illustration of Pavone's continuing authority, defendants refer to his refusal to implement Puglisi's repeated directives regarding a Drug Abuse Education Program. The district court correctly observed that Pavone has offered no evidence to refute defendants' position. Most of his statements on the subject are vague and conclusory. The few that are not refer either to alleged violations of Pavone's constitutional rights, which are irrelevant to his job responsibilities, or to trivial incidents such as the suggestion in the 1996 resolution that he might need to patrol the hallway during Town Board meetings. In addition, Pavone suffered no reduction in pay, benefits, or working hours. The district court correctly granted defendants summary judgment on this issue.
 
 C. Other Retaliatory Actions
 
 34
 1. Policy as Prior Restraint. We turn next to the claimed restraints on speech. Looking at the Town's revised Department procedures regarding press conferences, quoted earlier, we note that the language is almost identical to the text in the policies and procedures issued in 1992, and as such plaintiffs' claims arising from promulgation of this policy arguably were resolved in the 1994 Settlement Agreement. Moreover, because the policy clearly states that it simply requires notification of the subject matter of speech, it is not a prior restraint and does not violate the First Amendment. "Only where the government imposes a requirement of advance approval or seeks to enjoin speech can there be prior restraint." Dial Info. Servs. Corp. v. Thornburgh, 938 F.2d 1535, 1543 (2d Cir. 1991).
 
 
 35
 2. Implementation of Policy as Prior Restraint. Nonetheless, implementation of the new policy included defendant Lindau's public threat to discipline Pavone if he "talk[ed] to the press without getting permission." Such implementation creates a genuine issue of fact with respect to whether there was a prior restraint of Pavone's speech, therefore summary judgment on this issue is not appropriate. If a First Amendment violation is found on remand, the Board members acting in an executive function may still be shielded from liability by qualified immunity if their actions did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow, 457 U.S. at 818. To hold the Town liable, Pavone must show that defendants' acts amounted to a policy or practice the municipality had adopted. See Monell, 436 U.S. at 694.
 
 
 36
 3. Suit By Outsider. Pavone contends that defendants encouraged an outsider to sue him. In a nearly identical case, Carlos v. Santos, 123 F.3d 61, 65 (2d Cir. 1997), we ruled that members of a town board did not act under color of state law when they allegedly encouraged a third party to sue the chief of police. The reason is plain. Because any citizen may encourage a lawsuit, the alleged wrong cannot be said to have been accomplished because defendants were clothed with the authority of state law. See id. Thus, this claim fails as a matter of law.
 
 
 37
 4. No Interview for Pavone, Jr. Pavone, Jr. argues that he was denied an interview for a position with the Police Department because of his father's speech and that he has standing to assert the First Amendment rights of his father. Although there is a limited exception - not here applicable - ordinarily, one may not claim standing to vindicate the rights of a third party. See Allen v. Wright, 468 U.S. 737, 751 (1984). Hence, Pavone, Jr. lacks standing to maintain his 1983 suit.
 
 III Retaliation Claims - Morris
 
 38
 Morris' expressions of support for Pavone, his opposition to Puglisi's alleged ticket fixing activities, and his filing of grievances and reporting of the Town to OSHA involve matters of public concern and are therefore protected speech. See Connick, 461 U.S. at 146. To constitute an adverse employment action, a transfer must be accompanied by a negative change in the terms and conditions of employment. See Dahm v. Flynn, 60 F.3d 253, 257 (7th Cir. 1994) (transfer involving a dramatic downward shift in duties can rise to the level of an adverse employment action); see also Fyfe v. Curlee, 902 F.2d 401, 405 (5th Cir. 1990) (transfer from a productive position to a menial make-work one is an adverse employment action). Morris does not allege that the transfer here involved any change in job description, days and hours, duties, benefits, or opportunity for promotion. It follows that the transfer was not an adverse employment action.
 
 
 39
 His termination in 1996, however, together with the protected nature of his speech satisfies the first two factors of Mount Healthy City, but Morris has failed to establish the third factor, that is, causation between his protected speech and his discharge. No showing was made that defendants were even aware of his support for Pavone. Further, since two years elapsed between Morris' letter of support for Pavone and his discharge, no inference of causation is justified. Cf. Conner v. Schnuck Mkts., Inc., 121 F.3d 1390, 1395 (10th Cir. 1997) (four-month lag defeats inference of causation). Morris also offers no proof that his reporting of ticket fixing activities was causally linked to his termination, and he was uncertain whether the Town knew he had contacted OSHA. Moreover, defendants declare Morris was discharged because of a wrist injury that resulted in his being able to perform only 90 percent of his duties as an animal control officer. Morris acknowledges that the injury restricted the performance of some of his duties as of the date of his termination. He therefore has not presented evidence of retaliatory causation sufficient to survive summary judgment on his First Amendment claim.
 
 IV Due Process Claims
 A. Pavone
 
 40
 Pavone argues that various negative statements made by Board members deprived him of his liberty interest in his reputation without due process, in violation of the Fourteenth Amendment. Damage to an employee's reputation brought about by an employer's stigmatizing comments standing alone, however, is a matter properly vindicated under state tort law, and does not rise to a deprivation of a constitutional right. See Paul v. Davis, 424 U.S. 693, 701, 712 (1976); Donato v. Plainview-Old Bethpage Cent. Sch. Dist., 96 F.3d 623, 630 (2d Cir. 1996). Due process is only implicated when there is "stigma plus," that is to say a loss of reputation "coupled with some other tangible element." Valmonte v. Bane, 18 F.3d 992, 999 (2d Cir. 1994). For a government employee, a federal cause of action for deprivation of a liberty interest arises when the alleged defamation occurs in the course of some negative alteration of the employee's status, such as dismissal or refusal to rehire. See Neu v. Corcoran, 869 F.2d 662, 667 (2d Cir. 1989). In addition, the defamation must have occurred close in time to the dismissal or other negative employment action for an employee to succeed on a claim of a liberty deprivation. See Martz v. Incorporated Village of Valley Stream, 22 F.3d 26, 32 (2d Cir. 1994).
 
 
 41
 In his deprivation of liberty claim, Pavone asserts two negative employment actions by the Board: his alleged constructive demotion and his termination. We have previously concluded that the liberty interest implicated by demotion is "at best . . . weak," and suggested that it requires only limited procedural safeguards. Baden v. Koch, 799 F.2d 825, 831 (2d Cir. 1986). We need not explore this issue here. Because the evidence Pavone offers on the subject of his alleged demotion only supports an inference of a de minimis change in responsibility, he has suffered no "'deprivation of [a] legal right or status.'" Valmonte, 18 F.3d at 1000 (quoting Neu, 869 F.2d at 667).
 
 
 42
 In contrast, it is well established that defamation coupled with the termination of government employment is a deprivation of a liberty interest. See Davis, 424 U.S. at 710. Nevertheless, for such a claim to be viable, Pavone will need to furnish proof that the alleged critical statements were both defamatory and concurrent with his termination. See Martz, 22 F.3d at 32 (statements made five months after dismissal were not concurrent with it, and thus "stigma plus" not shown). We further note that any claims based on statements damaging Pavone's reputation made before November 15, 1994 are deemed covered by the 1994 Settlement Agreement and are thus barred by res judicata.
 
 B. Morris
 
 43
 Morris insists that he, like Pavone, was deprived of his liberty interest in his reputation without due process of law. The alleged defamation in this case, unlike Pavone's, was concurrent with Morris' dismissal. The question is whether any stigma has been alleged.
 
 
 44
 Upon examination, the record reveals that the statement by defendants at a Board meeting explained that Morris was being discharged because he was no longer able to perform his duties due to injury. The only evidence Morris provides to show that he was stigmatized by this description of his work related injury is that when he casually inquired from a friend about other work, the friend replied that after being "fired from the municipality," "no one will ever hire you." Such is not evidence sufficient to show he was stigmatized. Defendants' statement made it clear Morris was discharged for being unable to perform his job following a work related injury. Morris' other allegation of stigma - Nyberg called him a liar in front of an office full of people - did not occur concurrently with his termination. In sum, Morris has not shown a stigma that deprived him of a liberty interest.
 
 
 45
 We also agree with the district court that Morris' assertion that his discharge deprived him of a property interest in his civil service job does not state a due process violation of the Fourteenth Amendment. Even assuming he has a property interest in his civil service position, see Perry v. Sindermann, 408 U.S. 593, 601-03 (1972), he appears to have received adequate process for the reasons stated below.
 
 
 46
 The Town argues that under New York State law it had a statutory right to discharge Morris. See N.Y. Civ. Serv. Law 71 (McKinney 1983). Section 71 of the N.Y. Civ. Serv. Law has been interpreted to mean that an employee absent due to an occupational disability for one year is subject to termination if he is physically or mentally unable to return to his full duties. See Allen v. Howe, 84 NY2d 665, 669 (1994). An employee absent for a year may apply for reinstatement and is entitled to a hearing if found unfit for reinstatement. See id. at 672-73. But, Morris does not challenge the adequacy of the 71 procedures, nor does he argue that he re-applied for reinstatement to his old job and was unfairly rejected.
 
 
 47
 Instead, Morris contends that he could not be discharged without access to the procedural protections afforded by N.Y. Civ. Serv. Law 75. Unfortunately, Morris' union waived these procedural rights when it agreed to a collective bargaining agreement that stated
 
 
 48
 The only procedure for taking disciplinary action or measures against the employee covered by this Agreement shall be as set forth in the following section and shall, in addition, apply in lieu of Sections 75 and 76 of the Civil Service Law for the employees who would otherwise be covered by those sections.
 
 
 49
 Such waivers in collective bargaining agreements have been held valid, see Romano v. Canuteson, 11 F.3d 1140, 1141 (2d Cir. 1993) (citing cases), and Morris does not challenge the validity of this waiver.
 
 
 50
 In fact, Morris initially elected to pursue the grievance procedures provided for in the labor agreement, and later abandoned that path because of disappointing results with it in the past. His personal disappointment with the agreement makes it no less binding on him. See Antinore v. State, 371 N.Y.S.2d 213 (App. Div. 1975), aff'd, 40 NY2d 921 (1976). Where the plaintiff received the benefits of the collective bargaining contract, he must also accept its disadvantages, i.e., he must, so to speak, accept the bitter with the sweet. Morris has failed to prove he was subjected to inadequate process regarding his termination.
 
 
 51
 C. Pavone, Jr.
 
 
 52
 Pavone, Jr. asserts that he was deprived of his property interest by being denied an interview with the Police Department without due process. However, "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. ... He must, instead, have a legitimate claim of entitlement to it." Board of Regents v. Roth, 408 U.S. 564, 577 (1972). Pavone, Jr. has no legally protected interest in an interview or a job with the Police Department. See Deas v. Levitt, 73 NY2d 525, 532 (1989) (plurality opinion) (successful completion of the civil service exam does not create a property interest in an interview or a job); see also Donohue v. New York City Dep't of Probation, No. 88 Civ. 5110, 1989 WL 126096, at *7-*8 (S.D.N.Y. Oct. 13, 1989) (characterizing Deas as clarifying that New York law creates no legally protected interest in consideration for a job). Without a property interest in the interview, Pavone, Jr.'s due process claim must fail.
 
 V Remaining Matters
 A. Appropriate Relief
 
 53
 In determining what relief would be appropriate, it is helpful to look to Carlos v. Santos, 123 F.3d at 61, a case almost identical to this one. In Carlos, members of the Putnam Valley, New York, police force brought suits against certain members of the Town Board and the Town of Putnam Valley. Id. at 63. The plaintiffs alleged that the Board members planned to vote to abolish the Police Department as a means of retaliating against the Chief of Police for exercising his First Amendment rights. Id. In Carlos, we held that absolute immunity protected the local legislators from suit, but that the plaintiffs might recover damages from the municipality. Id. at 63, 66-67. We affirmed the district court's denial of injunctive relief because the plaintiffs had an adequate remedy at law in the form of potential damages available at trial. Id. at 67. The plaintiffs additionally had rights under N.Y. Civ. Serv. Law 80 et seq. to reinstatement were the defendants subsequently to hire a new police force. Id. In the case at hand, if plaintiffs show that the abolition of the Police Department violated their First Amendment rights, the district court then should determine whether they have adequate remedies at law, and whether an injunction would be inappropriate for policy reasons.
 
 B. Attorney's Fees
 
 54
 We come finally to the issue raised on cross-appeal: the attorneys' fees award. The district court awarded plaintiffs attorneys' fees in Pavone III based upon our "catalyst doctrine" because plaintiffs' lawsuit had apparently resulted in the abandonment of the plan to abolish the Police Department. Under the "catalyst doctrine," a plaintiff who obtains a settlement or a voluntary cessation of the challenged activity is a "prevailing party" entitled to attorney's fees under 42 U.S.C. 1988, if the lawsuit was a catalyst or a substantial factor for the defendant's favorable action. See Koster v. Perales, 903 F.2d 131, 134-35 (2d Cir. 1990). However, since the district court's decision, the Police Department has in fact been abolished, and plaintiffs at present cannot be considered "prevailing parties" under this doctrine. In light of that fact, we leave consideration of plaintiffs' claims to the district court. Attorneys' fees may now only be awarded pursuant to 1988 depending upon the outcome of this litigation on remand.
 
 C. Conspiracy Claims Under 1985
 
 55
 Plaintiffs also assert that defendants violated 1985(2) when Town Attorney Wood expressly conditioned renewal of plaintiffs' collective bargaining agreement upon the discontinuance of their federal civil rights actions. Section 1985(2) proscribes any conspiracy "to deter, by force, intimidation, or threat, any party or witness in any [federal] court ... from attending such court, or from testifying to any manner pending therein, ... or to injure [him] in his person or property on account of his having so attended or testified." 42 U.S.C. 1985(2).
 
 
 56
 Because plaintiffs have succeeded in bringing their suits, they must demonstrate that they have been "injured in [their] person or property" by the ensuing acts of defendants and have suffered an actual injury. See Haddle v. Garrison, 119 S. Ct. 489, 491, L.Ed.2d 502 (1998). It is not clear on the present record whether plaintiffs sustained actual harm from Woods' conditioning of the renewal of their collective bargaining agreement on dismissal of the federal lawsuits, and the answer to this factual inquiry must also await remand.
 
 CONCLUSION
 
 57
 We affirm the district court's holdings in Morris. With respect to Pavone II and Pavone III, our disposition is slightly more complicated.
 
 
 58
 We affirm the district court's dismissal of the First Amendment claims, with the exception of the claim that the Town's implementation of its prior notification policy constituted a prior restraint. As to that claim, we reverse and remand, noting that the Board members are entitled to qualified immunity when performing executive functions. We also reverse the district court's dismissal of the 1985 conspiracy claims and remand that issue.
 
 
 59
 We affirm the dismissal of Pavone's claims relating to his alleged demotion. We affirm the dismissal of Pavone, Jr.'s claims.
 
 
 60
 In light of the elimination of the Police Department after the district court dismissed Pavone III, we vacate that dismissal as to all issues arising out of the Department's abolition and remand them to the district court, with the recommendation that plaintiffs be directed to file a supplemental complaint.
 
 
 61
 Finally, we vacate the district court's order of attorneys' fees and remand that issue to the district court for its consideration.