Amy WHEELER, Plaintiff,

v.

Joseph NATALE, Warwick Valley
Central School District,
Defendants.

No. 00 CIV. 8561(CM).

United States District Court,
S.D. New York.

March 23, 2001.

Michael H. Sussman and Stephen Bergstein, Law Offices of Michael H. Sussman, Goshen, NY, for Plaintiff Wheeler.

David W. Silverman, Granik, Silverman, Campbell, and Hekker, New City, NY, for defendants Natale and Warwick Valley Central School District.

## MEMORANDUM DECISION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS

McMAHON, District Judge.

Plaintiff Amy Wheeler brings this civil rights action against Joseph Natale, Superintendent of the Warwick Valley Central School District, in his individual capacity, and against the Warwick Valley Central School District ("the School District") for violation of her First Amendment rights to speech and association under 42 U.S.C. §§ 1983 and 1988. Defendants move to dismiss under Fed. R.Civ.P. 12(b)(6) for failure to state a claim on which relief can be granted.

For the reasons stated below, defendants' motion to dismiss is denied.

### FACTUAL BACKGROUND

Plaintiff began working for the defendant School District in 1995–1996 as a substitute support staff member and clerical worker. On July 1, 1998, plaintiff was appointed on a provisional basis as a part-time switchboard operator.

In early 1999, plaintiff failed the second part of a two-part, County-administered civil service examination for the position of switchboard operator. Plaintiff's colleague, Nanette Susskraut, also failed the examination.

In May 1999, plaintiff began co-hosting a radio program with Mel Cohen, also known as "Uncle Mel." The program was broadcast live each weekday on a local radio station situated within the School District. Before starting to co-host the program, plaintiff told her direct supervisor, Tom Gustainis, of the opportunity, and promised not to reveal any District confidences.

According to plaintiff, defendant Natale asked his staff to listen to the program for anything adverse which plaintiff or Cohen might say about him or the District. Plaintiff contends that Cohen broadcast opinions critical of the District, which angered Natale.

In November 1999, plaintiff informed her supervisor that she was going to be out of work for a number of weeks for breast surgery. The next day, Gustainis told plaintiff that defendants were terminating her employment (along with that of Susskraut) effective December 24, 1999. Gustainis told plaintiff that she and Susskraut were fired because they failed the Civil Service Examination for switchboard operator.

The District hired a telephone receptionist from the list of people who passed the Civil Service Exam. The School District also created a position of telephone receptionist/typist requiring less than 20 hours per week, thus making the part-time position outside the scope of civil service rules. The District hired Susskraut for this position.

## DISCUSSION

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a complaint that fails to state a claim upon which relief can be granted. The standard of review on a motion to dismiss is heavily weighted in favor of the plaintiff. The Court is required to read a complaint generously, drawing all reasonable inferences from the complaint's allegations. *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 515, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972). "In ruling on a motion to dismiss for failure to state a claim upon which relief may be granted, the court is required to accept the material facts alleged in the complaint as true." *Frasier v. General Electric Co.,* 930 F.2d 1004, 1007 (2d Cir.1991). The Court must deny the motion "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Stewart v. Jackson & Nash,* 976 F.2d 86, 87 (2d Cir.1992) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

The Supreme Court has held that "a public employee does not relinquish First Amendment rights to comment on matters of public interest by virtue of government employment." *Pickering v. Board of Educ.,* 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); *Connick v. Myers,* 461 U.S. 138, 140, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); *Morris v. Lindau,* 196 F.3d 102, 109 (2d Cir.1999). In order to state a First Amendment retaliation claim under § 1983, plaintiff must demonstrate that (1) the speech was constitutionally protected; (2) she suffered an adverse employment decision; and (3) there was a causal connection between the speech and the adverse employment determination against her, so that it can be said that her speech was a motivating factor in the determination. *Morris,* 196 F.3d at 110; *Mount Healthy City Sch. Dist. Bd. Of Educ. v. Doyle,* 429 U.S. 274, 283–287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

### 1. Protected Speech

Plaintiff engaged in protected speech when she began co-hosting the "Uncle Mel" radio program.

The question of whether certain speech enjoys a protected status under the First Amendment is one of law, not fact. *See Connick,* 461 U.S. at 148 n. 7, 103 S.Ct. 1684. Central to this inquiry is whether the speech may "be fairly characterized as constituting speech on a matter of public concern." *Id.* at 146, 103 S.Ct. 1684. As a general rule, speech on "any matter of political, social, or other concern to the community" is protected by the First Amendment. *Id.* Expressive association claims, such as the plaintiff's claim that she was retaliated against for her association with a group, are considered to be the equivalent of free speech claims, since the expressive conduct alleged is inextricably linked to protected speech. *Birmingham v. Ogden,* 70 F.Supp.2d 353, 368–69 (S.D.N.Y.1999); *see also Abood v. Detroit Bd. Of Educ.,* 431 U.S. 209, 233, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977) ("[T]he freedom of an individual to associate for the purposes of advancing beliefs and ideas is protected by the First and Fourteenth Amendments"). Plaintiff alleges in her Complaint that the speech acts engaged in by co-host Cohen "concerned matters of public importance, specifically the appropriate running and operation of the school district." (Compl.¶ 20.) By virtue of her association with Cohen and participation in the "Uncle Mel" program, she has engaged in speech that is protected by the First Amendment. Neither party disputes this.

## 2. Adverse Employment Action

Defendants' failure to hire plaintiff for the newly-created part-time position constituted an adverse employment action.

Adverse employment actions include discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand. *Morris,* 196 F.3d at 110; *Kaluczky v. City of White Plains,* 57 F.3d 202, 208 (2d Cir.1995) (citing *Rutan v. Republican Party,* 497 U.S. 62, 75, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990)); *see also Bernheim v. Litt,* 79 F.3d 318, 327 (2d Cir.1996) (noting that adverse employment actions may include negative evaluation letters, express accusations of lying, assignment of lunchroom duty, reduction of class preparation periods, failure to process teacher's employment forms, transfer from library to classroom teaching as an alleged demotion, and assignment to classroom on fifth floor which aggravated a teacher's physical disabilities).

Plaintiff alleges an "adverse employment action" from each of two actions taken by the defendant: (a) the decision to fill her former job with a candidate who passed the Civil Service Exam (Compl.¶ 18); and (b) the decision to create a part-time position, and to fill it with her co-worker Susskraut, who also had failed the Exam. (Compl.¶ 17.) I will address each in turn.

### a. Plaintiff's Former Job

The parties do not dispute that plaintiff was a provisional employee, whose continued employment was contingent on her passing the Civil Service Exam.

The New York Civil Service Law provides that:

> No provisional appointment shall continue for a period in excess of nine months.... A provisional appointment to any position shall be terminated within two months following the establishment of an appropriate eligible list for filling vacancies in such positions;

N.Y. Civ. Serv. Law § 65(2)-(3).

When plaintiff failed the Civil Service Exam, the District was required under N.Y. Civ. Serv. Law § 65(3) to terminate her employment within two months of the establishment of an appropriate list of passing candidates. The District had no choice but to hire a candidate for the posi-

tion who had, in fact, passed the test. This is what the District did.

Plaintiff contends that the District changed the number of hours of the job to make it competitive-and thus subject to the Civil Service rules. Defendants argue that before failing the Exam, plaintiff had a provisional employment in a position that was subject to civil service qualifications. It was a competitive position which required the ultimate passing of the Civil Service Examination. Both parties recognized the provisional nature of plaintiff's employment, and the necessity for plaintiff to pass the Civil Service Exam to continue working.

Since plaintiff concedes that she did not pass the test and was therefore not listed upon the appropriate Civil Service list, plaintiff's employment, as a matter of law, had to come to an end. Plaintiff did not qualify for the Civil Service job, so she cannot allege a failure to hire, or "adverse employment action" against the defendants as a result of this decision.

b. The New Part–Time Job Created by the District

■ Plaintiff's allegation of failure to hire based on defendants' creating a part-time position, then filling it with plaintiff's former co-worker, is a different matter. After plaintiff and Susskraut failed the Civil Service Exam, the District created an additional position outside the scope of the civil service rules. The District hired Susskraut for that position.

There could have been a number of conceivable reasons for the District's hiring Susskraut, not the least of which was the fact that she had served the District for eighteen years, as compared to plaintiff's three. Defendants were faced with a situation where two employees failed a Civil Service Exam. They created a non-civil service job, but only one of the two per-sons could occupy it. Defendants then hired Susskraut, but not plaintiff. Whether this was in fact done with discriminatory animus is irrelevant at this stage. Plaintiff has alleged an adverse employment action from defendants' failure to hire her in the part-time position. Plaintiff survives the second prong of the *Morris* test.

3. Causal Connection Between Speech and Adverse Employment Action

The final prong of the *Morris* test is whether plaintiff has alleged a causal connection between the speech and the adverse employment action. I conclude that she has.

■ The causal connection must be sufficient to warrant the inference that the protected speech was a substantial motivating factor in the adverse employment action. That is to say, the adverse employment action would not have been taken absent the employee's protected speech. *Mount Healthy,* 429 U.S. at 287, 97 S.Ct. 568. Causation can be established either indirectly by means of circumstantial evidence—for example, by showing that the protected activity was followed by discriminatory treatment—or through evidence of disparate treatment of employees who engaged in similar conduct or directly through evidence of retaliatory animus. *Morris,* 196 F.3d at 110; *Sumner v. United States Postal Serv.,* 899 F.2d 203, 209 (2d Cir.1990).

■ Circumstantial facts in a retaliation claim can suggest an improper motive sufficient to withstand a motion to dismiss. *See, e.g., Gadson v. Goord,* 96–CV–7544, 1997 WL 714878, *8 (S.D.N.Y. Nov.17, 1997) (citing *Gagliardi v. Village of Pawling,* 18 F.3d 188 (2d Cir.1994)) (denying motion to dismiss where retaliation claim alleged a chronology of events from which

retaliatory intent could be inferred); *see also Murphy v. Lane*, 833 F.2d 106, 108–09 (7th Cir.1987) ("Chronology of events from which retaliatory animus on part of the defendants could be inferred" sufficient to overcome motion to dismiss). Courts have noted that without inquiring into the defendants' motives, "those intent on punishing the exercise of constitutional rights could easily mask their behavior behind a complex web of *post hoc* rationalizations." *Piesco v. City of New York*, 933 F.2d 1149 (2d Cir.1991) (citing *Peacock v. Duval*, 694 F.2d 644, 646 (9th Cir.1982)) (internal quotation marks omitted).

 Plaintiff contends that defendants fired her because of "Natale's hostility toward Mel Cohen and to plaintiff's association with him, of which he was aware," (Compl.¶ 19), and because of "Natale's hostility to the speech acts engaged in by Cohen, which concerned matters of public importance, specifically the appropriate running and operation of the defendant School District." (Compl.¶ 20.) Plaintiff further argues that Natale "requested staff to surveil this radio show for anything adverse which Cohen or plaintiff might say about him or the school district. Natale also told his department heads that if they reported to him such adverse comments, they would be rewarded." (Compl.¶ 13.) While defendant is correct that asking others to listen to the radio does not constitute an abridgement of rights, if true, it certainly supports an inference that he was ready to punish plaintiff for any comments critical of the District.

Plaintiff has stated a claim for violation of her First Amendment rights under § 1983. While she does not allege any fact which would create a superior right on the plaintiff's part to the newly created position or any reason for selecting plaintiff over her co-worker, Susskraut, her allegations that Natale first asked subordinates to monitor her show for "adverse" statements, and then subsequently decided not to rehire her, could establish a causal connection between her affiliation with "Uncle Mel" and defendants' decision not to rehire her.

Because this is a motion to dismiss and not a motion for summary judgment, the Court finds that plaintiff alleges a sequence of events which may be read as providing some support for an inference of retaliation sufficient to withstand a motion to dismiss. Whether they will survive a motion for summary judgment is another question—one that cannot be answered today.

Defendants' motion to dismiss is therefore denied.

This constitutes the decision and order of this Court.