Amy WHEELER, Plaintiff,

v.

Joseph NATALE, Warwick Valley Central School District, Defendants.

No. 00 CIV. 8561(CM).

United States District Court, S.D. New York.

Dec. 19, 2001.

Michael H. Sussman, Law Offices of Michael H. Sussman, Goshen, NY, for plaintiff.

David W. Silverman, Granik, Silverman, Campbell & Hekker, New York City, for defendants.

## MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

McMAHON, District Judge.

Plaintiff Amy Wheeler brings this civil rights action against Joseph Natale, Superintendent of the Warwick Valley Central School District ("Natale"), in his individual capacity, and against the Warwick Valley Central School District ("the School District") for violation of her First Amendment rights to speech and association under 42 U.S.C. §§ 1983 and 1988. Defendants move for summary judgment pursuant to Fed.R.Civ.P. 56(c).

For the reasons stated below, defendants' motion for summary judgment is granted.

### FACTS PERTINENT TO THE MOTION

Plaintiff first began working for the School District in 1994 as a substitute staff member and clerical worker. On July 1, 1998, plaintiff was hired on a provisional basis as a part-time switchboard operator. On the same day, Nanette Susskraut, who had held various positions within the School District for fourteen years, was also hired as a part-time switchboard operator on a provisional basis. In the first few months of their employment, each woman was given identical performance evaluations by Tom Gustainis, their direct supervisor.

In 1999, plaintiff failed the second part of a two-part, County-administered civil service examination for the position of switchboard operator. Plaintiff's colleague, Nanette Susskraut, failed the first part of the examination, and could not sit for the second part.

Wheeler and Susskraut's positions were provisional. When both women failed the Civil Service Examination, the School District was required, under N.Y.Civ.Serv.L. § 65(3), to terminate their employment within two months of the creation of an appropriate list of passing candidates. In November 1999, plaintiff's employment was terminated effective December 24, 1999, pursuant to N.Y.Civ.Serv.L. § 65(3). As this Court held in its Decision and Order Denying Defendants' Motion to Dismiss, the termination of plaintiff's employment was not only justified, but was mandated, and is not actionable. *Wheeler v. Natale,* 137 F.Supp.2d 301, 304–305 (S.D.N.Y.2001).

In December 1999, the School District passed a resolution stating that Susskraut would work a diminished number of hours in a newly-created non-civil service part-time position outside the scope of civil service rules. The reclassification of Susskraut's job description to a part-time non-civil service position was approved by the Department of Personnel of the County of Orange on March 6, 2000.

Plaintiff claims that the defendants failed to hire her for this new position, rather than Susskraut (who had substantially more seniority in the District), because of her association with one Mel Cohen and his radio show.

In May 1999, plaintiff began co-hosting a radio program with Mel Cohen, a/k/a "Uncle Mel." The program was broadcast live each weekday on a local radio station situated within the School District. Before plaintiff began co-hosting the program, she told Gustainis of the activity, and promised not to reveal any District confidences. Plaintiff began openly dating Cohen in early 1999. Both Gustainis and Natale knew

that plaintiff dated Cohen and worked as a co-host on his radio show.

Plaintiff alleges that Natale disliked Mel Cohen and his radio program because of a statement made by Cohen during his show in which he reported that School District bus drivers were using drugs and alcohol. This comment was provoked by the arrest of a School District bus driver on DWI charges. Plaintiff alleges that Natale, angered by the negative remarks regarding the School District made by Cohen on his radio show, asked his staff to listen to the show for anything adverse that plaintiff or Cohen might say about him or the School District.[1]

In her deposition, plaintiff testified that she was not present when Natale made his alleged request to the staff. [Wheeler Dep., p. 14.] Plaintiff testified that her mother, Hope Wheeler, told plaintiff that Antoinette White, the health and attendance coordinator at the District, told Wheeler about Natale's alleged statement. *Id.* Plaintiff also testified that she "heard from other people that other department heads were told the same thing," but did not identify these "other people" or "other department heads" by name. *Id.* Thus, plaintiff's claim rested on triple hearsay testimony.

At her deposition, Antoinette White denied telling Hope Wheeler about any such statement made by Natale. [White Dep., pp. 23–27.] Furthermore, she denied that Natale ever made such a statement in her presence, or that she had heard of such a statement. *Id.* Two other district assistant superintendents also denied ever hearing Natale ask that individuals surveil the "Uncle Mel" show. [Gustainis Dep., pp. 22–23; Niedzielski Dep., pp. 21–24, 41.] Natale denied making such a statement. [Natale Dep., p. 34.]

Plaintiff contends that she should have been hired for the newly-created position because she was more qualified that Susskraut. Plaintiff also argues that, although both she and Susskraut failed the civil service examination, she had passed the first part of the exam, and therefore displayed a greater potential for success. Plaintiff also claims that Susskraut was given negative performance reviews for her work in a prior position within the School District. This "negative" review was given to Susskraut in 1993 for her work as a food service helper, and noted that she needed improvement in a few areas. As noted above, plaintiff's and Susskraut's performance reviews as telephone switchboard operators were identical.

Plaintiff's membership with the Civil Services Employees Association provides for a three step grievance procedure, and in the event no resolution is achieved with respect to the grievance, a final step of arbitration is available at the sole discretion of the union. A three step grievance procedure commenced in December 1999. Plaintiff's claims were denied at each step. The union did not pursue arbitration.

## DISCUSSION

### I. *Summary Judgment Standard*

A party is entitled to summary judgment when there is no "genuine issue of material fact," and the undisputed facts

---

1. Plaintiff further claims that Gustainis disliked Cohen because the two of them had once argued over a transportation contract that the district granted to someone else. Apart from his radio show, Cohen contracted with the district as a vendor of special education transportation services. This alleged argument between Gustainis and Cohen has nothing to do with Cohen's radio show, and the remarks made therein. Accordingly, this alleged argument is irrelevant to plaintiff's claim that she was not hired for the new position because of her association with the radio show.

warrant judgment for the moving party as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In addressing a motion for summary judgment, "the court must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in [its] favor." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Whether any disputed issue of fact exists is for the Court to determine. *Balderman v. United States Veterans Admin.*, 870 F.2d 57, 60 (2d Cir.1989). The moving party has the initial burden or demonstrating the absence of a disputed issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once such a showing has been made, the non-moving party must present "specific facts showing that there is a genuine issue for trial". Fed.R.Civ.P. 56(e). The party opposing summary judgment "may not rely on conclusory allegations or unsubstantiated speculation." *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir.1998). Moreover, not every disputed factual issue is material in light of the substantive law that governs the case. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

On this motion, taking the facts as alleged, and drawing reasonable inferences in plaintiff's favor, plaintiff has failed, as a matter of law, to establish facts sufficient to plead a case of unconstitutional First Amendment retaliation.

## II  *First Amendment Retaliation Claim*

■ The Supreme Court has held that "a public employee does not relinquish First Amendment rights to comment on matters of public interest by virtue of government employment." *Pickering v. Board of Educ.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); *Connick v. Myers*, 461 U.S. 138, 140, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); *Morris v. Lindau*, 196 F.3d 102, 109 (2d Cir.1999). In order to state a First Amendment retaliation claim under § 1983, plaintiff must demonstrate that (1) the speech was constitutionally protected; (2) she suffered an adverse employment decision; and (3) there was a causal connection between the speech and the adverse employment determination against her, so that it can be said that her speech was a motivating factor in the determination. *Morris*, 196 F.3d at 110; *Mount Healthy City Sch. Dist. Bd. Of Educ. v. Doyle*, 429 U.S. 274, 283–287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). If plaintiff establishes these three factors, the defendant has the opportunity to show that it would have made the same adverse employment decision in the absence of the protected conduct. *Id.*

### A.  Protected Speech and Adverse Employment Decision

This Court previously held that plaintiff engaged in protected speech when she began co-hosting the "Uncle Mel" radio program, *Wheeler*, 137 F.Supp.2d at 304, and that defendants' failure to hire plaintiff for the newly-created part-time position constituted an adverse employment decision, *id.*, at 305. I see no reason to revisit these conclusions.

### B.  Causal Connection Between Protected Speech and Adverse Employment Decision.

■ The final prong of plaintiff's First Amendment retaliation claim is whether there is a causal connection between the protected speech and the adverse employ-

ment decision. The causal connection must be sufficient to warrant the inference that the protected speech was a substantial motivating factor in the adverse employment action. That is to say, the adverse employment action would not have been taken absent the employee's protected speech. *Mount Healthy,* 429 U.S. at 287, 97 S.Ct. 568. Causation can be established indirectly by means of circumstantial evidence, or directly through evidence of retaliatory animus. *Morris v. Lindau,* 196 F.3d 102, 110 (2d Cir.1999); *Sumner v. United States Postal Serv.,* 899 F.2d 203, 209 (2d Cir.1990).

Here, plaintiff has failed to present specific facts that show any causal connection between her association with the "Uncle Mel" radio show and the district's failure to hire her to fill the newly-created position.

In my decision denying defendants' motion to dismiss pursuant to Rule 12(b)(6), this Court held that plaintiff's "allegations that Natale first asked subordinates to monitor her show for 'adverse' statements, and then subsequently decided not to re-hire her, could establish a causal connection between her affiliation with 'Uncle Mel' and defendants' decision not to re-hire her." *Wheeler,* 137 F.Supp.2d at 306. Without evidence that Natale had asked others to monitor plaintiff's speech, and had done so prior to the decision not to hire plaintiff for the newly-created position, there is no "causal connection" between plaintiff's association with the "Uncle Mel" show and defendants' decision not to hire her. The fact that she co-hosted a show that is critical of the School District, and that another woman, who had more than ten years seniority in the School District than plaintiff, was hired for the newly-created job position, does not create a prima facie case of First Amendment re-

taliation. The causal connection must be established.

■ Plaintiff offers no admissible evidence that Natale made a request of his staff to monitor the "Uncle Mel" show. The only "evidence" that plaintiff provides in support of her allegation that Natale asked his staff to monitor the "Uncle Mel" show is plaintiff's testimony that her mother, Hope Wheeler, was told by Antoinette White that Natale made this statement. Wheeler's testimony about what her mother told her Antoinette White said about what Natale said is triple hearsay, Fed. R.Civ.P. 801(c). Hearsay is not sufficient to defend a motion for summary judgment, *see Albert v. Loksen,* 239 F.3d 256, 266 (2d Cir., 2001); *Sarno v. Douglas Elliman–Gibbons & Ives, Inc.,* 183 F.3d 155, 160 (2d Cir.1999). Ms. White, the one direct source for plaintiff's allegations, unequivocally denied that she ever made such a statement to Hope Wheeler, or that she had any awareness of Natale's alleged request to the staff. [White Dep., pp. 23–27.] Thus, plaintiff's testimony hardly qualifies as reliable enough to raise a genuine issue of fact.

Plaintiff's allegation that she heard of Natale's request from "other people" is plainly too vague and unsubstantiated to sustain her claim. Everyone that plaintiff deposed denied that they had ever heard Natale make such a statement, or had no knowledge of such a statement. [Gustainis Dep., pp. 22–23; Niedzielski Dep., pp. 21–24, 41.]

In short, plaintiff has provided absolutely no proof that Natale ever asked his staff to monitor the "Uncle Mel" show.

Even if plaintiff had provided a scintilla of evidence to support an existence of causation, the record shows that the School District bus driver whose arrest allegedly provoked the adverse comments made by Mel Cohen on his show, was arrested

months after plaintiff's employment with the School District ended. [Gustainis Dep., p. 66; Natale Dep., pp. 63–64.] It is impossible that this incident could have been the motivating factor behind defendants' decision not to hire plaintiff for the new position.

■ Where there is no admissible evidence that the statements of the former employer caused or contributed to the adverse employment action, plaintiff has failed to present a prima facie case of First Amendment retaliation. *Sarno,* 183 F.3d at 160.

Viewing the evidence in a light most favorable to the plaintiff, and drawing all reasonable inferences in her favor, I find that are no material facts that would provide a genuine issue for trial.

## CONCLUSION

For the reasons stated above, defendants' Motion to Dismiss Plaintiff's Complaint and Grant Summary Judgment is granted.

This constitutes the decision and order of the Court.