H. Richard **HELLSTROM,**
**M.D., Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF VETERANS AFFAIRS, Philip Thomas, Director, Syracuse Medical Center, and E. Douglas Holyoke, M.D., and his successor, Chief of Staff, Syracuse Medical Center, Defendants.**

No. 5:96–CV–369(FJS/GJD).

United States District Court,
N.D. New York.

Oct. 30, 2001.

Mimi C. Satter, Satter & Andrews, LLP, Syracuse, NY, for Plaintiff.

Office of the United States Attorney, Syracuse, NY, for Defendants, Charles E. Roberts, AUSA, Of Counsel.

## MEMORANDUM–DECISION AND ORDER

SCULLIN, Chief Judge.

## I. INTRODUCTION

Plaintiff filed his original complaint against Defendants on February 29, 1996 and an amended complaint on May 15, 1998. In his amended complaint, Plaintiff asserted that Defendants had violated his Fourteenth Amendment due process rights because the Syracuse Medical Center failed to provide him with a formal hearing prior to reassigning him and because Defendants' denial of his grievances was arbitrary and capricious and unsupported by law and fact. Plaintiff also claimed that Defendants had retaliated against him in violation of the First Amendment by reassigning him because he spoke out in opposition to Defendant Thomas' appointment as Director of the Syracuse Medical Center and against affirmative action.

After Defendants filed their answer, but before any discovery had been conducted, Defendants moved for summary judgment. The Court granted Defendants' motion, finding that (1) Plaintiff was not entitled to a formal hearing; (2) his reassignment was not arbitrary and capricious; (3) his comments about Defendant Thomas were personal and, thus, not protected speech; and (4) Plaintiff would have been reassigned regardless of whether he had stated his opposition to affirmative action.

Plaintiff appealed from this Court's decision granting summary judgment on his First Amendment claims. *See Hellstrom v. United States Dep't of Veterans Affairs*, 201 F.3d 94, 96 (2d Cir.2000). The Second Circuit vacated the judgment and remanded for further proceedings on the ground that Plaintiff "was prejudiced in his efforts to accumulate needed evidence because he was denied the opportunity to conduct discovery ... [and, therefore,] [t]he grant of summary judgment to [Defendants] was premature." *Id.* at 98.

After remand, the parties conducted discovery and notified Magistrate Judge Di-Bianco when discovery was complete. Thereafter, Defendants renewed their motion for summary judgment. It is this renewed motion which is presently before the Court. The Court heard oral argument in support of, and in opposition to, Defendants' motion on October 26, 2001.[1] At the close of argument, the Court ren-

---

1. At oral argument, Plaintiff acknowledged that he did not appeal from this Court's decision with respect to his due process claims and, therefore, the only claims remaining in this action are his two First Amendment claims.

dered its decision with respect to one of Plaintiff's First Amendment claims and reserved decision with respect to the other. The following constitutes the Court's entire decision with respect to this motion.

## II. DISCUSSION[2]

It is well-established that " 'a public employee does not relinquish First Amendment rights to comment on matters of public interest by virtue of government employment.' " *Hale v. Mann*, 219 F.3d 61, 70 (2d Cir.2000) (quoting *Connick v. Myers*, 461 U.S. 138, 140, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983) (citing *Pickering v. Board of Educ.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968))). On the other hand, "a government employer has an interest in promoting efficient public service by its employees and may regulate its employees' speech." *Id.* (citation omitted). Thus, the Court must "weigh the interests of the employee 'in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.' " *Id.* (quoting [*Pickering,* 391 U.S.] at 568, 88 S.Ct. 1731). "In balancing these interests, a court must consider whether the statement sought to be protected 'impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships ... or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise.' " *Lewis v. Cowen*, 165 F.3d 154, 162 (2d Cir.1999) (quoting *Rankin*, 483 U.S. at 388, 107 S.Ct. 2891) (other citation omitted).

Before a court is required to balance the interests of the parties, however, " 'a plaintiff ... must initially demonstrate by a

preponderance of the evidence that: (1) his speech was constitutionally protected, (2) he suffered an adverse employment decision, and (3) a causal connection exists between his speech and the adverse employment determination against him.' " *Hale*, 219 F.3d at 70 (quoting *Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir.1999)). In the present case, the first and third factors are at issue.

The question of "[w]hether an employee's speech addresses a matter of public concern and is thus protected under the First Amendment is 'one of law, not fact.' " *Id.* (quoting *Morris*, 196 F.3d at 110 (citing *Connick*, 461 U.S. at 148 n. 7, 103 S.Ct. 1684)). "This determination must be made based on 'the content, form, and context of a given statement, as revealed by the whole record.' " *DiMarco v. Rome Hosp. & Murphy Mem. Hosp.*, No. 88–CV–1258, 1991 WL 336000, *8 (N.D.N.Y. July 1, 1991) (quoting *Connick*, 461 U.S. at 147, 103 S.Ct. at 1690). " 'When employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude ... without intrusive oversight by the judiciary....' " *Lewis*, 165 F.3d at 161 (quoting *Connick*, 461 U.S. at 146, 103 S.Ct. 1684) (other citations omitted). Thus, if the employee is merely speaking "as an employee upon matters only of personal interest[,]" his speech is not subject to First Amendment protection. *Connick v. Myers*, 461 U.S. 138, 147, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983) (when an employee speaks out "upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a

---

**2.** In response to the Court's inquiry, Plaintiff acknowledged that he sued Defendant Ho- lyoke in his official capacity only.

public agency allegedly in reaction to the employee's behavior." (citation omitted)).

In addition to establishing that his speech was constitutionally protected, a plaintiff must also demonstrate that a causal connection exists between that speech and the adverse employment action taken against him. "Causation can be established either indirectly by means of circumstantial evidence, for example, by showing that the protected activity was followed by adverse treatment in employment, or directly by evidence of retaliatory animus." *Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir.1999) (citing *Sumner v. United States Postal Serv.*, 899 F.2d 203, 209 (2d Cir.1990)). If the plaintiff is able to establish these factors, "the burden shifts to the employer to establish that 'it would have taken the same adverse employment action "even in the absence of the protected conduct." ' " *Hale*, 219 F.3d at 70 (quoting [*Morris*, 196 F.3d at 110] (quoting *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977))). However, "[s]ummary judgment is precluded where questions regarding an employer's motive predominate in the inquiry regarding how important a role the protected speech played in the adverse employment decision." *Morris*, 196 F.3d at 110 (citing *Piesco v. City of New York*, 933 F.2d 1149, 1155 (2d Cir.1991)).

With these standards in mind, the Court will address each of Plaintiff's First Amendment claims *seriatim*.

1. *Plaintiff's opposition to Defendant Thomas' appointment as Director of the Syracuse Medical Center*

██ Defendants contend that Plaintiff has not established a claim of First Amendment retaliation because he cannot demonstrate either that his comments about Defendant Thomas were a matter of public concern or that these comments, even if they were a matter of public concern, were a motivating factor in Defendants' decision to reassign him.

To the contrary, Plaintiff contends that his criticism of Defendant Thomas is protected speech under the First Amendment because comments about the performance and integrity of a highly visible public official concern issues that affect the social and political concerns of the community. Specifically, Plaintiff asserts that he criticized Defendant Thomas for basing personnel decisions on considerations other than merit, attacked Defendant Thomas for his political favoritism, and questioned Defendant Thomas' qualifications for permanent appointment as Director of the Syracuse Medical Center. Plaintiff further claims that he based his criticism of Defendant Thomas on his belief that to allow an employee to avoid deserved discipline simply because she had filed an EEO charge exhibited a fundamental lack of qualifications for the position of Director.

Plaintiff made his initial statements regarding Defendant Thomas' competency during a meeting he had with Defendant Thomas on November 1, 1994. The purpose of that meeting was to discuss one of Plaintiff's subordinates, Lynn Scheffer–Wilson, who had been a problem and whom Plaintiff wanted to discipline. Ms. Scheffer–Wilson had also accused Plaintiff of sexual harassment. At the November 1, 1994 meeting, Plaintiff told Defendant Thomas that he wanted to suspend Ms. Scheffer–Wilson. Defendant Thomas disagreed with Plaintiff and stated that, in light of Ms. Scheffer–Wilson's pending charges against Plaintiff, such punishment would appear retaliatory. Plaintiff did not like Defendant Thomas' decision and, by his own admission, became angry and frustrated. He called Defendant Thomas a bully and accused him of prostituting him-

self. Plaintiff also told Defendant Thomas that he was unfit to serve as the Director of a large, complex medical facility because of his tendency to intimidate and harm services by his refusal to approve necessary discipline for wholly political reasons.

Immediately after the November 1, 1994 meeting, Plaintiff attempted to organize other supervisors against Defendant Thomas by initiating a series of conversations and meetings with numerous employees, including Defendant Thomas' supervisor, all of the service chiefs at the Syracuse Medical Center, and the Dean of the Medical School. Plaintiff told all of these people that he thought Defendant Thomas was unfit for permanent appointment as Director because he had acted unethically and immorally.

There is no question that, in certain circumstances, comments about an individual's qualifications for a highly visible position can constitute speech about a matter of public concern to which First Amendment protection will attach. However, such comments cannot be viewed in a vacuum. Rather, as this Court has noted, the determination whether an employee's speech addresses a matter of public concern must be based upon " 'the content, form and context of a given statement, as revealed by the whole record.' " *DiMarco*, 1991 WL 336000, at *8 (quoting *Connick*, 461 U.S. at 147, 103 S.Ct. at 1690). When Plaintiff's statements are viewed in the context of the entire record, it is clear that Plaintiff made his statements about Defendant Thomas in his role as an employee— not in his role as a private citizen. Plaintiff was angry and frustrated by Defendant Thomas' response to his request to suspend Ms. Scheffer–Wilson and disagreed with the manner in which Defendant Thomas chose to handle a personnel matter. Plaintiff's reaction to this situation, which included making disparaging com-

ments about Defendant Thomas' qualifications, does not convert those comments into protected speech. Accordingly, the Court finds that Plaintiff's comments when properly viewed as arising from a purely private disagreement between colleagues about the manner in which a personnel matter should be handled do not constitute protected speech for purposes of the First Amendment.

Alternatively, even assuming that Plaintiff's statements about Defendant Thomas did address a matter of public concern, Plaintiff's claim still fails because he has not established a causal connection between his comments and his reassignment. First, there is no temporal connection between Plaintiff's comments and his reassignment—the two events were separated by approximately fourteen months. Moreover, there was a significant intervening event that occurred between the time that Plaintiff made his comments and the time that he was reassigned. Defendants did not reassign Plaintiff immediately, or even shortly, after he made these comments. Rather, they did so only after they had completed an investigation, conducted by individuals from outside the Syracuse Medical Center, into allegations that Plaintiff had made discriminatory comments about an applicant for a position in his laboratory and had created a hostile work environment in the laboratory that he supervised. Since Plaintiff has failed to come forward with even a scintilla of evidence that a causal connection exists between his comments and his reassignment, his First Amendment claim based upon his comments about Defendant Thomas fails as a matter of law. Accordingly, the Court grants Defendants' motion for summary judgment with respect to this claim.

### 2. *Plaintiff's comments regarding affirmative action*

Defendants assert that Plaintiff's statement, "I have not made an effort to

hire minorities. I am personally not a believer in affirmative action," during the course of an investigation into complaints that Plaintiff had made discriminatory comments about an applicant for a position in his laboratory is not protected speech. Specifically, Defendants argue that Plaintiff made this comment as part of his defense to charges of professional misconduct and, thus, the comment was purely a matter of private concern which cannot be construed as protected speech. To the contrary, Plaintiff asserts that his comment regarding affirmative action is protected by the First Amendment even if he made the comment during an investigation which resulted in his reassignment.

In the abstract, the issue of affirmative action is certainly a matter of public concern. However, under the circumstances of this case, Plaintiff's statement about his personal opposition to affirmative action must be viewed in the context in which it was made—as a personal response to charges of discrimination leveled against him. Viewed in this light, Plaintiff's statement clearly was made in his capacity as an employee who was speaking about a matter of purely personal interest, rather than as a citizen concerned with a matter of public import. Therefore, the Court concludes that Plaintiff's comment regarding affirmative action is not protected speech within the meaning of the First Amendment. Accordingly, the Court grants Defendants' motion for summary judgment with respect to this claim.

## III. CONCLUSION

After carefully considering the file in this matter, the parties' submissions and oral arguments, and the applicable law, and for the reasons stated herein as well as at oral argument, it is hereby

**ORDERED** that Defendants' motion for summary judgment is **GRANTED** in its entirety; and it is further

**ORDERED** that the Clerk of the Court enter judgment in favor of Defendants and close this case.

**IT IS SO ORDERED.**