Louis J. ALTERI, John F. Bujak, Garry Chappell, David Corsaro, William J. DeRito, Rose Marie Fox, Robert Gallipeau, Thomas J. Gibbons, Jr., Michael A. Giroux, Marjorie H. Glowacki, Charlotte D. Hawkins, Christine M. Hotaling, Michael B. Kolodzie, Barbara Kulak, Stefan Kuczynski, Karen M. Lane, Ernest Lewis, Donna M. Lyskawa, John F. Lyskawa, David L. Mathews, Lenny R. Mattison, John C. Meloling, Cynthia G. Nagy, Nancy A. Raymo, David Ruston, Darlene Stedman, Joanne M. Taylor, Daniel Thomas, Frank L. Thompson, Linda E. Wright, and Timothy J. Young, Plaintiffs,

v.

GENERAL MOTORS CORPORATION; Local Union 854, United Automobile, Aerospace & Agricultural Implement Workers of America–UAW, Defendants.

No. 94–CV–0641.

United States District Court,
N.D. New York.

March 19, 1996.

Mannion, Copani, Alderman & Brown, Syracuse, NY (Anthony F. Copani, of counsel), for plaintiffs.

Harris Beach & Wilcox, L.L.P., Rochester, NY (James C. Holahan, of counsel), for defendant General Motors Corp.

Lipsitz, Green, Fahringer, Roll, Salisbury & Cambria, L.L.P., Buffalo, NY (Richard Lipsitz, of counsel), for defendant Local Union 854.

POOLER, District Judge.

## INTRODUCTION

Defendants General Motors Corp. ("GM") and Local Union 854 ("Local 854") each moved for summary judgment against plaintiffs Louis J. Alteri, et al. in this action under the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. Defendants argue in the alternative that plaintiffs failed to meet the six-month statute of limitations applicable to this lawsuit and failed to exhaust their administrative remedies with the union. Because plaintiffs reasonably knew or should have known of defendants' breach more than six months before they filed this lawsuit, I grant defendants' motions.

1. Local 854 is an affiliate of the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW"). The international union is not a defendant in this litigation.

## BACKGROUND

The 31 plaintiffs, each of whom was a member of Local 854, worked for GM at the Inland Fisher Guide Division ("Fisher Guide") plant in East Syracuse. In early December 1992, GM announced that it would close the Fisher Guide plant. At the time of the announcement a collective bargaining agreement that the international union and GM had negotiated in 1990 was in effect (the "1990 Agreement").[1] James Ciotti Aff. of 10/24/94, Ex. A. Pursuant to the 1990 Agreement, GM and the international union negotiated an additional agreement to govern the GM plant closings, including the shutdown in East Syracuse. The two parties signed the resulting Memorandum of Understanding on February 23, 1993. *Id.* Ex. B.

Starting in March 1993, Local 854 posted notices and distributed leaflets at the Fisher Guide plant to explain the Memorandum of Understanding. Each of the plaintiffs agrees that he or she saw or received a copy of a bulletin board notice from Local 854 dated "March 1993." *Id.* Ex. C (also attached as ex. A to individual plaintiffs' affidavits).[2] Local 854 officials also met with union members to discuss the Memorandum of Understanding and its impact on the imminent plant closing. *Id.* ¶ 8. Plaintiffs allege, however, that Local 854 leaders failed to explain the agreement or misled union members about its provisions.

Plaintiffs chiefly dispute a provision in the Memorandum of Understanding that expands the "area hire" region from that within a 50–mile radius of Syracuse to the area within a 150–mile radius of Syracuse. Ciotti Aff. Ex. B. The Memorandum of Understanding provided that eligible GM employees could retire and that other GM employees could transfer to various GM factories according to preferences they indicated on a "Special Placement Process Selection Sheet." *Id.* Ex. B ¶ 2. GM employees also could apply to work at Saturn Corporation in Ten-

2. In their affidavits, plaintiffs fail to specify when they saw or reviewed the March 1993 notice.

nessee. *Id.* In addition, the Memorandum of Understanding stated:

> Employees remaining at Inland Fisher Guide—Syracuse as of September 1, 1993 who have not elected to retire pursuant to the letter of agreement noted in 1 above, have not been redeployed pursuant to this memorandum and have not selected "none of the above" on the Special Placement Process Selection Sheet attached, *will be assigned to one of the plants within the 150 mile radius of Syracuse, New York based upon an allocation determined by Management* with employees being given their choice in line with their seniority.

*Id.* Ex. B ¶ 8 (emphasis added). The Memorandum of Understanding therefore amended "Doc No. 21" to the 1990 Agreement, which provided that "[a]n Area Hire is comprised of all plants with a 50–mile radius of a given plant or larger as may be agreed upon by the National Parties." *Id.* Ex. A, at 374. All of the plaintiffs except Nancy A. Raymo and Timothy J. Young completed and signed Special Placement Process Selection Sheets ("selection sheets"). Under the heading "Area Hire Transfers," these documents indicated that five GM factories were within a 150–mile radius of Syracuse. Although plaintiffs allege that they questioned Local 854 officials about the content and implications of the Memorandum of Understanding, plaintiffs did not formally complain to Local 854 or to the international union about the area hire policy change.[3]

GM laid off plaintiffs between October 1993 and January 1994. Pl. Statement of Material Facts, ¶ 10. Because they did not accept jobs at GM plants within a 150–mile radius of Syracuse, GM placed plaintiffs on "formal leave of absence for personal reasons" status between November 1993 and April 1994. *Id.* The Memorandum of Understanding stated that an employee "who, at the point of being offered a transfer in accordance with their (sic) election, refuses to accept such transfer or fails to report in accordance with such transfer, will be placed on a Formal Leave of Absence...." Ciotti Aff. Ex. B ¶ 9. This status designation meant that plaintiffs were ineligible to receive company fringe benefits, including supplemental unemployment benefits.

Plaintiffs commenced this lawsuit on May 17, 1994. The second amended complaint filed on July 18, 1995, contains one cause of action regarding GM's breach of contract and Local 854's breach of its duty of fair representation. Defendants filed responsive pleadings. By order of Magistrate Judge Di Bianco, defendants provided limited discovery to plaintiffs. GM and Local 854 then moved separately for summary judgment. Defendants primarily argue that the complaint should be dismissed because plaintiffs (1) missed the six-month statute of limitations applicable to "hybrid" lawsuits under the LMRA; and (2) failed to exhaust their administrative remedies with the union. Plaintiffs opposed the motion. Oral argument took place on February 5, 1996.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment shall enter if, when viewing the evidence in the light most favorable to the nonmovant, the court determines that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Eastman Kodak Co. v. Image Technical Servs., Inc.,* 504 U.S. 451, 456, 112 S.Ct. 2072, 2076, 119 L.Ed.2d 265 (1992). A party seeking summary judgment must demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). If the movant satisfies this initial burden, then the burden shifts to the nonmovant to proffer evidence demonstrating that a trial is required because a disputed issue of fact exists. *Weg v. Macchiarola,* 995 F.2d 15, 18 (2d Cir.1993). The nonmovant must do more than present evidence that is merely color-

---

**3.** On February 12, 1994, plaintiff Darlene Stedman filed an unfair labor practice charge against the union and GM with the National Labor Relations Board ("NLRB") in which she challenged the expansion of the area hire region to 150 miles. Darlene Stedman Aff. of 9/29/95, Ex. M. The NLRB refused to consider the charge because it was barred by the applicable six-month statute of limitations in 29 U.S.C. § 160(b). *Id.* The NLRB also rejected Stedman's appeal. *Id.*

able, conclusory, or speculative and must present "concrete evidence from which a reasonable juror could return a verdict in his favor...." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). The nonmovant must do more than show "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## II. Statute of Limitations

■ All parties agree that a six-month statute of limitations applies to this lawsuit. Defendants contend that plaintiffs should have become aware of the union's alleged breach of the duty of fair representation by April 1993, when they signed the selection sheets. Plaintiffs' May 17, 1994, complaint is untimely if the statute of limitations began to run in April 1993. Plaintiffs respond that the statute of limitations began to run in November 1993, when GM placed them on formal leave status and terminated their benefits.

■ A lawsuit by union members against both their employer and their union is known as a "hybrid" action under the LMRA because it combines a breach of contract action against the employer and a breach of the duty of fair representation action against the union. *DelCostello v. International Bhd. of Teamsters*, 462 U.S. 151, 164–65, 103 S.Ct. 2281, 2290–91, 76 L.Ed.2d 476 (1983). In a hybrid action, the court does not require an employee-plaintiff to first exhaust administrative remedies with the union before proceeding to court. *Id.* at 164, 103 S.Ct. at 2290. However, a six-month statute of limitations governs plaintiff's lawsuit. *Id.* at 172, 103 S.Ct. at 2294.

■ The six-month statute of limitations period begins "when a plaintiff knows or reasonably should know that the union has breached its duty of fair representation."

*Flanigan v. Truck Drivers Local No. 671*, 942 F.2d 824, 827 (2d Cir.1991) (citing *Santos v. District Council of New York City and Vicinity of United Bhd. of Carpenters and Joiners of Am.*, 619 F.2d 963, 969 (2d Cir. 1980)). In other words, the limitations period begins when plaintiffs first could have successfully maintained a lawsuit. *Id.* For example, when a plaintiff knew one month after his termination that the union had done nothing to pursue his grievance against the employer, the six-month statute of limitations began to run. *See Cohen v. Flushing Hosp. and Medical Ctr.*, 68 F.3d 64, 68 (2d Cir. 1995). In another case, the six-month period began when plaintiffs learned that the union accepted an overtime provision in violation of the union constitution. *See Legutko v. Local 816, Int'l Bhd. of Teamsters*, 853 F.2d 1046, 1047–48, 1055 (2d Cir.1988).

■ Plaintiffs argue that the six-month statute of limitations began when they were affected by the defendants' decision to expand the area hire region to 150 miles. The effect did not occur until GM placed plaintiffs on formal leave of absence status and they lost their benefits. Contrary to plaintiffs' assertions, however, the relevant consideration is not the time at which they suffered an adverse result. *See Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 165 (2d Cir. 1989). Instead, the court must consider the time plaintiffs learned of the union action or inaction of which they complain. *Id.*[4] As an alternative argument, plaintiffs contend that an issue of fact exists regarding when they became aware of the terms of the Memorandum of Understanding and knew the effects of the 150–mile area hire policy change. The undisputed facts do not support plaintiffs' position.

In their complaint, plaintiffs allege that Local 854 breached its duty of fair representation when it "permitted Defendant GM to place the Plaintiffs on an involuntary 'formal leave of absence for personal reasons' and

---

4. A Northern District of New York case upon which plaintiffs rely held no differently. *See Engelhardt v. Consolidated Rail Corp.*, 594 F.Supp. 1157 (N.D.N.Y.1984), *aff'd*, 756 F.2d 1368 (2d Cir.1985). In that case, the court held that plaintiffs missed the six-month statute of limitations even if it considered the time at which they were affected by the breach but that the "more realistic view" was to consider the time when plaintiffs discovered the union's adverse action. *Id.* at 1170.

failed and refused to properly and appropriately represent the Plaintiffs." Second Am. Compl. ¶ 61. This breach did not occur when GM changed the leave status of each plaintiff. Rather, the union "permitted" GM to take that action when the international union agreed to the Memorandum of Understanding in February 1993 and the local union refused to challenge the agreement. The Memorandum of Understanding is the document that both changed the 150–mile area hire region and defined the consequences for employees who refused a job at a GM plant within that area.

Drawing all reasonable inferences in favor of plaintiffs, they became aware that Local 854 agreed to expand the area hire region when each plaintiff signed the selection sheet in April 1993. Up until that time, Local 854 officials provided plaintiffs with conflicting, incomplete or misleading information regarding the plant closing and its effect on their benefits. However, the selection sheets clearly labelled five GM factories under the heading "AREA HIRE TRANSFERS" and stated after the name of each factory that it "is within a 150 mile radius of Syracuse, New York." See, e.g., Stedman Aff. Ex. B. Moreover, each plaintiff signed a statement on the selection sheet indicating that the Memorandum of Understanding and the 1990 Agreement controlled layoff benefits.[5] Id. At a minimum, the selection sheets gave plaintiffs notice that the area hire region no longer was only the 50–mile area surrounding Syracuse, that Local 854 endorsed this rule change, and that they could not vote on the change. This information was sufficient to provide plaintiffs with a cause of action against the union for breach of its duty of fair representation. At oral argument, plaintiffs claimed that conditions at the plant were unsettled and they remained hopeful until GM terminated their benefits that the facto-

ry would remain open. However, an alleged uncertainty did not forestall the statute of limitations "even if some possibility of nonjudicial enforcement remained." Santos, 619 F.2d at 969.

The plaintiffs' alleged difficulty in receiving information about the Memorandum of Understanding only was additional notice to them that Local 854 was not representing them adequately. Indeed, each plaintiff admits seeing an explanatory letter from Local 854 dated "March 1993," which states in relevant part: "AREA HIRE TRANSFERS Our closing agreement also identifies five (5) plants, located in New York State, within a 150 mile radius of the Syracuse Plant which our members may choose to transfer to under the provisions of Area Hire as described in the Plant Closing Agreement." Ciotti Aff. Ex. C. This information was sufficient to alert plaintiffs that the union had changed the area hire region without their approval or contrary to their interests.[6] See Legutko, 853 F.2d at 1055.

Even if the April 1993 date is not relevant for statute of limitations purposes, there can be no dispute that plaintiffs attending a union meeting on October 17, 1993 knew that the area hire region had expanded to 150 miles. Plaintiffs themselves provided handwritten notes of the meeting, during which someone asked why GM was "forcing people to go to Buffalo," and the union officials answered "because our area hire was expanded to 150 miles ... by National Parties." Anthony F. Copani Aff. of 9/29/95, Ex. 14, at 3. Of course, October 1993 is more than six months before plaintiffs filed their lawsuit on May 17, 1994. Finally, at least two of the plaintiffs stated that union officials told them in the spring of 1993 that it would be fruitless to file grievances challenging the 150–mile area hire region because the international union had agreed to the policy

---

5. For this reason, I reject plaintiffs' argument that the applicable area hire region returned to 50 miles when GM and the union adopted the 1993 collective bargaining agreement. The 1993 contract became effective on November 15, 1993, before some plaintiffs were laid off. Second Am.Compl. ¶ 50; Agreement between UAW and the General Motors Corp., 10/24/93.

6. Although plaintiff Timothy Young did not sign a selection sheet, he did receive the March 1993 letter from Local 854. Timothy J. Young Aff. of 9/27/95, Ex. A. Young also stated that he was aware of the 150–mile hire area in April 1993. Id. ¶ 10. Plaintiff Nancy A. Raymo did not sign a selection sheet, but she stated in her affidavit that she was aware in April 1993 of the form's language regarding a 150–mile hire area. Nancy A. Raymo Aff. of 9/28/95, ¶¶ 12–13.

change. *See* John C. Meloling Aff. of 9/28/95, ¶ 19; Christine M. Hotaling Aff. of 9/28/95, ¶ 13. Plaintiffs' knowledge of both the policy change and Local 854's unwillingness to challenge the change was sufficient to trigger the statute of limitations. *See Buttry v. General Signal Corp.,* 68 F.3d 1488, 1492 (2d Cir. 1995).

Consequently, there is no issue of fact that each plaintiff was aware by April 1993 that the area hire region was expanded from 50 miles to 150 miles, triggering the statute of limitations. This policy change was the action by which the union breached its duty of fair representation because the change permitted GM to place plaintiffs on formal leave status after they refused a transfer within the expanded area hire region. Because April 1993 is more than six months before plaintiffs filed their lawsuit, the statute of limitations bars this action.

### CONCLUSION

Drawing all reasonable inferences in favor of plaintiffs, I nonetheless find as a matter of law that a reasonable person should have known in April 1993 that Local 854 breached its duty of fair representation to plaintiffs and GM breached the 1990 CBA. Because plaintiffs did not file this lawsuit within six months of April 1993, the statute of limitations bars their action. Defendants' motion for summary judgment is granted, and the complaint is dismissed. Because of my holding, I do not address defendants' alternative arguments regarding administrative exhaustion.

IT IS SO ORDERED.