**David D. PETRARIO, Plaintiff,**

v.

**Leslie CUTLER, et al., Defendants.**

**No. CIV.A. 3:97 CV 1086(CFD).**

United States District Court,
D. Connecticut.

Feb. 19, 2002.

James S. Brewer, West Hartford, CT, for Plaintiff.

William N. Kleinman, Attorney General's Office, Farmington, CT, for Defendants.

### RULING ON MOTION FOR SUMMARY JUDGMENT

DRONEY, District Judge.

The plaintiff, David Petrario, an employee of the University of Connecticut Health Center ("Health Center"), brings this action against the defendants, several Health Center officials, pursuant to 42 U.S.C. § 1983,[1] claiming that they subjected him

---

1. The parties do not dispute that Health Center is a state entity, or that the defendants are state officials for purposes of § 1983. The

defendants, and their positions during the actions alleged in the Complaint, consist of: Leslie Cutler, CEO of the Health Center, and

to certain treatment during his employment in violation of state and federal law. He seeks compensatory and punitive damages, costs and attorney's fees, and other equitable relief.

The defendants have filed a motion for summary judgment. For the following reasons, the motion for summary judgment [Document # 52] is GRANTED.

## I. Background [2]

The plaintiff has been employed by the Health Center since September of 1979. He is currently a supervisor for the HVAC/R unit, which is responsible for the maintenance and repair of heating, ventilating, air conditioning, refrigeration and related equipment. At all relevant times, the plaintiff was a member of the Connecticut Employees Union Independent ("Union"). On May 2, 1990, the plaintiff, as well as other Health Center Union members, filed an unfair labor practices complaint against the State of Connecticut, the Health Center, the Union, and others pursuant to a collective bargaining agreement with the State of Connecticut Board of Labor Relations ("Labor Board"). The grievance alleged collusion between the Union and the Health Center. The grievance was dismissed by the Labor Board on September 19, 1995, and an administrative appeal was filed in the Connecticut Superior Court. In June of 1997, the plaintiff brought the instant action, claiming that, since the filing of the union grievance and through the pendency of the administrative appeal, the defendants subjected him to certain treatment during his employment in violation of state and federal law.

The plaintiff appears to allege that the defendants: (1) violated his rights under the First Amendment to the U.S. Constitution by retaliating against him for filing a union grievance; (2) deprived him of his property and liberty in violation of due process as guaranteed by the U.S. Constitution; (3) deprived him of the privileges and immunities guaranteed him by the U.S. Constitution; (4) denied him equal protection in violation of the U.S. Constitution; (5) negligently inflicted emotional distress upon him; (6) intentionally inflicted emotional distress upon him; and (7) violated certain of his rights guaranteed by the Connecticut Constitution.

## II. Summary Judgment Standard

In the context of a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." *Miner v. City of Glens Falls*, 999 F.2d 655, 661 (2d Cir. 1993) (internal quotation marks and citation omitted). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir.) (quoting *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505, but omitting internal quotation marks), *cert. denied*, 506 U.S. 965, 113 S.Ct. 440, 121 L.Ed.2d 359 (1992).

Norman Gessay, Thomas Gaffey, David Penney, Robert Clawson, Rick Conley, and Karen Duffy–Wallace, managers of the Health Center.

**2.** The following facts are based on the parties' Local Rule 9(c) Statements and other summary judgment papers and are undisputed unless otherwise indicated.

After discovery, if the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

"The nonmovant must do more than present evidence that is merely colorable, conclusory, or speculative and must present 'concrete evidence from which a reasonable juror could return a verdict in his favor.'" *Alteri v. General Motors Corp.*, 919 F.Supp. 92, 94–95 (N.D.N.Y.1996) (quoting *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505). A party may not create its own "genuine" issue of fact simply by presenting contradictory or unsupported statements. *See Securities & Exch. Comm'n v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir.1978). When a motion for summary judgment is supported by documentary evidence and sworn affidavits, the nonmoving party must present "significant probative evidence to create a genuine issue of material fact." *Soto v. Meachum*, Civ. No. B–90–270(WWE), 1991 WL 218481, at *6 (D.Conn. Aug. 28, 1991).

In ruling on a motion for summary judgment, the Court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." *Aldrich*, 963 F.2d at 523. Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.), *cert. denied*, 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991); *see also Suburban Propane v. Proctor Gas, Inc.*, 953 F.2d 780, 788 (2d Cir.1992).

## III. Discussion

### A. Initial Rulings

As an initial matter, as set forth at the hearing on the motion, summary judgment is GRANTED by agreement of the parties as to the following: (1) all claims against defendants Robert Clawson [3] and Leslie Cutler; (2) all claims against the remaining defendants in their official capacities for money damages or retroactive relief; (3) the plaintiff's privileges and immunities claim; (4) the plaintiff's claim for negligent infliction of emotional distress; and (5) all of the plaintiff's claims under the Connecticut Constitution.[4]

The following discussion addresses the remaining issues and defendants,[5] as raised by the motion for summary judgment.

### B. Plaintiff's Remaining Claims

The plaintiff contends that certain actions taken by the defendants during his employment violated his rights under state and federal law. Those actions include:

(a) docking his pay ten minutes in 1991;

---

**3.** This defendant is also referred to as Robert Claussen throughout the pleadings.

**4.** To the extent that the plaintiff's pleadings briefly mention "defamation," *see* Supp'l Mem. Opp'n Defs.' Mot. Dismiss Alt. Summ. J. at 1, the plaintiff has not alleged a defamation claim in his amended complaint, briefed the issue of defamation, or presented sufficient evidence to support such a claim. Nor did the plaintiff raise it at the hearing on this motion. The Court therefore concludes that

summary judgment is appropriate as to any claim for defamation that may exist.

**5.** The remaining defendants are Norman Gessay, Thomas Gaffey, David Penney, and Karen Duffy–Wallace in their individual capacities, and Norman Gessay, Thomas Gaffey, David Penney, Rick Conley, and Karen Duffy–Wallace in their official capacities only for injunctive relief.

(b) assigning him unpleasant tasks that were normally performed by other departments in 1991;

(c) furloughing him in 1991 pursuant to a directive from the Governor regarding nonessential employees;

(d) recommending his suspension in 1992;

(e) denying him overtime in 1992 and 1994;

(f) failing to consider him for promotions in 1992 and 1995;

(g) requiring him to develop a sick leave policy for his unit in 1994;

(h) ceasing to offer him informal computer training in 1994;

(i) disconnecting his computer in 1995;

(j) rating his work performance as merely "satisfactory" in 1995, 1996, and 1997;

(k) counseling him concerning two incidents involving his unit in 1996 and 1997;

(*l*) discussing his demotion or termination in 1999.[6]

As noted above, only the plaintiff's First Amendment, due process, equal protection, and intentional infliction of distress claims remain. Each is discussed below.

### 1. *First Amendment Retaliation Claim*

■ The plaintiff asserts that, since the filing of his union grievance and continuing through the pendency of the administrative appeal, the defendants engaged in the above conduct abridging his First Amendment rights in retaliation for his association with the Union and his filing of a union grievance. When the First Amendment rights of a public employee are disputed, the court must balance the employee's right to comment on matters of public concern with the government's interest as an employer to effectively and efficiently provide public services. *See Bernheim v. Litt,* 79 F.3d 318, 324 (2d Cir.1996) (citing *Connick v. Myers,* 461 U.S. 138, 142, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983) and *Pickering v. Board of Educ.,* 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968)). A public employee making a First Amendment claim based on activity implicating freedom of association and free speech must:

initially demonstrate by a preponderance of the evidence that: (1) his [activity] was constitutionally protected, (2) he suffered an adverse employment decision, and (3) a causal connection exists between his [activity] and the adverse employment determination against him, so that it can be said that his [activity] was a motivating factor in the determination. If the plaintiff establishes these factors, the defendant has the opportunity to show by preponderance of the evidence that it would have taken the same adverse action even in the absence of the protected conduct.

*Gorman–Bakos v. Cornell Coop. Extension,* 252 F.3d 545, 553 (2d Cir.2001) (quoting *Morris v. Lindau,* 196 F.3d 102, 110 (2d Cir.1999) (basing this standard on that set forth in *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 283–87, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977))); *see Blum v. Schlegel,* 18 F.3d 1005, 1010 (2d Cir.1994); *Ezekwo v. NYC Health & Hosp. Corp.,* 940 F.2d 775, 780–81 (2d Cir. 1991), *cert. denied,* 502 U.S. 1013, 112 S.Ct. 657, 116 L.Ed.2d 749 (1991).

■ As to whether the plaintiff's activity was constitutionally protected, the First Amendment protects the right of public employees to join together in a union, to seek redress for grievances through that collective entity, and to be free from retali-

---

**6.** These allegations are taken from the plaintiff's complaint and deposition testimony.

ation for engaging in such activities. *Smith v. Arkansas State Highway Employees,* 441 U.S. 463, 464–65, 99 S.Ct. 1826, 60 L.Ed.2d 360 (1979). The Second Circuit has held that, "[t]here is no doubt that retaliation against public employees solely for their union activities violates the First Amendment." *Clue v. Johnson,* 179 F.3d 57, 60 (2d Cir.1999); *Stellmaker v. DePetrillo,* 710 F.Supp. 891, 892 (D.Conn. 1989) ("[T]he state may not abridge the right of public employees to associate in a labor union and to seek redress of grievances through collective action, nor may it retaliate against an employee for doing so.") (internal citations omitted); *Gavrilles v. O'Connor,* 611 F.Supp. 210 (D.Mass. 1985).

 Though a public employee's *speech* is constitutionally protected only when it can "be fairly characterized as constituting . . . a matter of public concern," *Morris,* 196 F.3d at 110 (quoting *Connick,* 461 U.S. at 140, 103 S.Ct. 1684), the Second Circuit has not yet ruled on whether the "public concern" requirement applies to hybrid free speech/freedom of association claims made by public employees. *See Clue,* 179 F.3d at 60 & n. 2. *Compare Boals v. Gray,* 775 F.2d 686, 691–92 (6th Cir.1985), *with Hatcher v. Board of Pub. Educ.,* 809 F.2d 1546, 1558 (11th Cir.1987). The Court assumes *arguendo,* however, that the public concern requirement does apply to such claims. *See Clue,* 179 F.3d at 60 & n. 2. Accordingly, in order to be constitutionally protected, the plaintiff's activity must involve "'any matter of political, social, or other concern to the community.'" *Morris,* 196 F.3d at 110 (quoting *Connick,* 461 U.S. at 140, 103 S.Ct. 1684). In light of the nature

of the union grievance filed by the plaintiff, namely, allegations of collusion between the Union and the Health Center, the Court concludes as a matter of law that the plaintiff's union activity involves a matter of "public concern." *See Clue,* 179 F.3d at 60 ("[R]etaliation solely for union activity clearly raises a public concern under *Connick* . . . ."); *cf. Larsen v. Lynch,* No. CIVA3:95CV302 (AWT), 1998 WL 229919, at *3 (D.Conn. March 31, 1998) (finding plaintiff's union activity constituted "personal grievances" and thus were a matter of private, rather than public, concern).

 The Court concludes, however, that the plaintiff has not presented sufficient evidence to create genuine issues of material fact as to whether the plaintiff suffered any adverse employment action and whether his protected activity was a substantial or motivating factor in any adverse employment action.[7] In *Phillips v. Bowen,* 278 F.3d 103 (2d Cir.2002), the Second Circuit clarified the Circuit's definition of "adverse employment action" as it applies to First Amendment retaliation claims. According to the court, a plaintiff may prove "adverse employment action" either by presenting evidence of the classic examples of discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand, *see Morris,* 196 F.3d at 110, or by showing that "(1) using an objective standard; (2) the total circumstances of her working environment changed to become unreasonably inferior and adverse when compared to a typical or normal, not ideal or model, workplace." *Phillips,* 278 F.3d 109; *see also Bernheim,* 79 F.3d at 324–26 (stating that conduct that impairs the plaintiff's reputation, op-

---

7. To the extent the inquiry into whether the plaintiff suffered any adverse employment action involves interpretation of the plaintiff's collective bargaining agreement, the parties have not raised any issues regarding the Labor Management Relations Act and its application to such inquiry.

portunities for advancement, and earning potential may constitute adverse employment action). "Incidents that are relatively minor and infrequent will not meet the standard, but otherwise minor incidents that occur often and over a long period of time may be actionable if they attain the critical mass of unreasonably inferiority." *Phillips,* 278 F.3d 109.

■ The defendant's alleged actions of furloughing the plaintiff in 1991, denying him overtime in 1992 and 1994, and failing to consider him for promotions in 1992 and 1995, fall within the traditional definition of "adverse employment actions." *See Morris,* 196 F.3d at 110. However, the plaintiff has not presented sufficient evidence to create genuine issues of material fact as to whether his union grievance was a substantial or motivating factor in these actions. This causal connection may be established "either indirectly by means of circumstantial evidence, for example, by showing that the protected activity was followed by adverse treatment in employment or directly by evidence of retaliatory animus." *Id.* The plaintiff's principal evidence that these actions were motivated by his union grievance is his statement in a deposition that he believes as much. *See id.* at 111 ("Plaintiffs may not rely on conclusory assertions of retaliatory motive, must offer instead some tangible proof to demonstrate that their version of what occurred was not imaginary."). Moreover, the plaintiff has not presented sufficient evidence from which a trier of fact could conclude that these actions, even the earliest alleged action of their furlough of him in 1991, occurred in sufficient temporal proximity to the grievance to create a reasonable inference of a causal connection. *See Reed v. A.W. Lawrence & Co.,* 95 F.3d

1170, 1178 (2d Cir.1996) (holding that plaintiff may establish causal connection by "showing that the protected activity was closely followed in time by the adverse [employment] action"); *Gorman–Bakos,* 252 F.3d at 554–55 (citing cases regarding temporal relationship between protected activity and retaliatory action and deciding that a passage of five months between the instant plaintiffs' complaint and retaliatory action was enough to support an inference).

■ As to the defendants' alleged actions of docking the plaintiff's pay ten minutes in 1991, assigning him unpleasant tasks that were normally performed by other departments in 1991, recommending his suspension (but not suspending him) in 1992, requiring him to develop a sick leave policy for his unit in 1994, ceasing to offer him informal computer training in 1994, disconnecting his computer in 1995, rating his work performance as merely "satisfactory" in 1995, 1996, and 1997, counseling him concerning two incidents involving his unit in 1996 and 1997, and discussing demoting or terminating him in 1999, such actions do not constitute any of the "classic examples" of adverse employment action. Additionally, a reasonable juror could not find that such actions, when considered together and in combination with the "classic examples" using the *Phillips* standard, created a working environment for the plaintiff that was unreasonably inferior and adverse when compared to a typical or normal workplace. The plaintiff has simply not established that these actions, which occurred over the span of eight years, permeated his work environment and "directly and adversely affected h[is] work conditions in a substantial way."[8]

---

**8.** Although the defendant Gessay, in his deposition, when asked if he thought that the plaintiff had been working in a hostile envi-ronment stated: "I guess my answer to that would be yes," that is not enough to satisfy the standard set forth here.

*Phillips*, 278 F.3d at 110. Accordingly, the plaintiff has not established that such actions constitute "adverse employment action" for the purposes of his retaliation claim. Moreover, even if the Court were to find that the alleged adverse actions did constitute "adverse employment action," the plaintiff has not adduced any evidence causally connecting such actions to his 1990 union grievance. This case can be distinguished from *Phillips*, where the plaintiff presented some direct evidence of retaliation, as well as a close temporal relationship between the adverse action and the retaliatory actions, which, when viewed in combination, gave rise to a reasonable inference of retaliation. *See Id.*

Accordingly, as the plaintiff has not presented evidence creating genuine issues of material fact that the defendants retaliated against him for the filing of his union grievance, the motion for summary judgment is GRANTED as to the plaintiff's First Amendment retaliation claim.[9]

### 2. *Due Process Claim*

The plaintiff also claims that he was deprived of a protected property interest without due process of law when he was subjected to the above described actions by the defendants.[10] Specifically, in his memorandum in opposition to the motion for summary judgment, the plaintiff claims that the defendants' furlough of him, refusal to grant him promotions, and discussion of his demotion or termination, deprived him of property without procedural due process.

■■■■■ The Due Process Clause of the Fourteenth Amendment "extends its pro-

cedural guarantees only to deprivation of a protected interest in life, liberty, or property. . . . To have a property interest in a government benefit, a person clearly must have more than an abstract need . . . for it. . . . He must . . . have a legitimate claim of entitlement to it." *Plaza Health Labs., Inc. v. Perales*, 878 F.2d 577, 581 (2d Cir. 1989) (citations and internal quotation marks omitted). Such entitlements are created by existing rules that stem from independent sources of state law. *See id.* However, "[a] property interest does not exist solely because of the importance of the benefit to the recipient." *Kelly Kare, Ltd. v. O'Rourke*, 930 F.2d 170, 175 (2d Cir.1991), *cert. denied*, 502 U.S. 907, 112 S.Ct. 300, 116 L.Ed.2d 244 (1991). "[T]he existence of provisions that retain for the state significant discretionary authority over the bestowal or continuation of a government benefit suggests that the recipients of such benefits have no entitlement to them." *Plaza Health Labs.*, 878 F.2d at 577.

■■■■■ The Court concludes that the plaintiff has failed to state a cause of action under the Due Process Clause as he has not established that he had a legitimate claim of entitlement under Connecticut law to employment at the Health Center: (1) with a right to receive promotions, (2) without being furloughed, and (3) without fear of being demoted or terminated. *See Bernheim*, 79 F.3d at 322 ("To state a cause of action under the due process clause, a plaintiff must show that she has a property interest, created by state law, in the employment or the benefit that was

---

**9.** Although the plaintiff refers to his retaliation claim as one arising "under Title VII" in his opposition to the defendant's motion for summary judgment, neither his original complaint nor his amended complaint set forth a cause of action under Title VII. Accordingly,

the Court does not treat this as an alleged cause of action.

**10.** As set forth at the hearing, the plaintiff no longer contends that he was deprived of a liberty interest without due process of law.

removed."). Although the Court concludes that in some circumstances a state employee may be entitled to employment that includes the right to receive promotions and not be furloughed, *see, e.g., Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 576, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) (discussing property interests in public employment created by tenure provisions or employment contracts); *Schwartz v. Thompson*, 497 F.2d 430, 433 (2d Cir.1974) (indicating that a property interest in a promotion may exist where, for example, the promotion is tied solely to seniority or other objective criteria), the plaintiff in this case has failed to make a showing that under Connecticut law he is so entitled. Although the plaintiff has alleged that he is employed pursuant to a collective bargaining agreement, he has not demonstrated that under Connecticut law his status as a union employee at the Health Center guarantees him the right to receive promotions, not be furloughed, and not to fear demotion or termination. Nor is the nature of his property interest self-evident based on his union status, particularly because he has not been fired or demoted. *See, e.g., Kaluczky v. City of White Plains*, 57 F.3d 202, 211 (2d Cir. 1995) ("The nature of such a property interest is not self-evident, because [the plaintiff] has not been fired and his salary has not been cut."); *Kalkowski v. Town of Hamden*, No. 3:99CV1158 (RNC), 2000 WL 435552, at *2 (D.Conn. Mar.13, 2000) (holding that a police officer was not deprived of a property interest where he was not deprived of any employment opportunity except a promotion). Accordingly, the motion for summary judgment is GRANTED as to the plaintiff's procedural due process claim.

### 3. *Equal Protection Claim*

The plaintiff also claims that the defendants treated him differently than other union members who had filed other, previous grievances in violation of his right to equal protection under the U.S. Constitution. As to the plaintiff's equal protection claim, the defendants argue that the plaintiff has failed to establish that he is a member of a protected class or that he was discriminated against as a result of his membership in such a class. In opposition to summary judgment, the plaintiff alleges that "he belonged to a distinct and recognizable class, a group of five union members ... who filed a labor grievance on May 2, 1990 regarding unfair labor practices .... Over the following years retaliatory actions were committed against most of the members of this group including the Plaintiff." Mem. Opp'n Defs.' Mot. Dismiss Alt. Summ. J. at 9. Even assuming that the plaintiff has presented enough evidence to support these allegations, the Court concludes, as a matter of law, that the plaintiff's equal protection claim is insufficient to withstand the motion for summary judgment.

▇▇ The Second Circuit has not recognized a right under the Equal Protection Clause to be free from retaliation based on union activity. Indeed, the Second Circuit has held that no right exists under the Equal Protection Clause to be free from retaliation based on a complaint of race discrimination. *See Bernheim*, 79 F.3d at 323–24 ("Although claims of retaliation are commonly brought under the First Amendment ... and may also be brought under Title VII, ... we know of no court that has recognized a claim under *the equal protection clause* for retaliation following complaints of racial discrimination.") (internal citations omitted) (emphasis added); *cf. Ratliff v. DeKalb County*, 62 F.3d 338, 340–41 (11th Cir.1995) (refusing to recognize clearly established right under equal protection clause to be free from retaliation based on complaint of sex

discrimination); *Gray v. Lacke*, 885 F.2d 399, 414 (7th Cir.1989) (same), *cert. denied*, 494 U.S. 1029, 110 S.Ct. 1476, 108 L.Ed.2d 613 (1990); *but cf. Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1353 (2d Cir.1994) (indicating that the conduct of administrative proceedings, at which a contractor appeared to respond to charges that it was in default, in an invidiously selective manner in retaliation for the exercise of First Amendment rights constitutes an equal protection violation). Accordingly, as the plaintiff has not offered an alternate basis for his equal protection claim, the Court concludes that no reasonable jury could return a verdict for the plaintiff on this claim. The motion for summary judgment is therefore GRANTED as to the plaintiff's equal protection claim.

### 4. *Intentional Infliction of Emotional Distress*

 The plaintiff has also alleged that the above described actions by the defendants comprised "an orchestrated campaign to undermine the Plaintiff's reputation and credibility within the organization," Supp'l Mem. Opp'n Defs.' Mot. Dismiss Alt. Summ. J. at 7, which caused him severe emotional harm. The Court concludes as a matter of law that no genuine issue of material fact exists as to the plaintiff's claim for intentional infliction of emotional distress under Connecticut law.

In order for the plaintiff to prevail in a case for ... intentional infliction of emotional distress, four elements must be established. It must be shown: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4)

that the emotional distress sustained by the plaintiff was severe.

*Appleton v. Board of Educ. of Town of Stonington*, 254 Conn. 205, 757 A.2d 1059, 1063 (2000) (internal quotation marks and alterations omitted). "Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question of law." *Id.*

Liability for intentional infliction of emotional distress requires conduct that exceeds all bounds usually tolerated by decent society. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

*Id.* (internal citations, quotation marks, and alterations omitted).

 Even assuming that the plaintiff has presented enough evidence to support his allegations of the defendants' conduct, the Court concludes as a matter of law that the alleged incidents, individually or as a whole, are insufficient to create a genuine issue of material fact as to whether the defendants' conduct was extreme and outrageous. As a matter of law, these incidents are not so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and be regarded as atrocious. While some of the incidents may have been distressing and hurtful to the plaintiff, as a matter of law they are not matters which can be considered utterly intolerable in a civilized community. *See Appleton*, 757 A.2d at 1063; *see also, e.g., Lucuk v. Cook*, No. CV950050210S, 1998 WL 67412, at *5 (Conn.Super.Ct. Feb.11, 1998) ("[C]ourts appear to agree that mere insults or verbal taunts do not rise to the level of extreme and outrageous conduct even when they include obnoxious activity like threats, in-

sults, or taunts."); *Manley v. Blue Cross/ Blue Shield of Connecticut,* No. CV910322213S, 1996 WL 532506, at \*13–14 (Conn.Super.Ct. Sept.10, 1996) (involving termination of employment); *cf. Ferraro v. Stop & Shop Supermkt. Co.,* No. CV960388031S, 2000 WL 768525, at \*5–6 (Conn.Super.Ct. May 25, 2000) (citing examples of extreme and outrageous conduct). Consequently, the motion for summary judgment is GRANTED as to the plaintiff's claim for intentional infliction of emotional distress.

## IV. Conclusion

For the preceding reasons, the motion for summary judgment [Document # 52] is GRANTED.

The Clerk is directed to close the case.