**Harry L. SMITH, et al., Plaintiffs,**

v.

**CHAMPION INTERNATIONAL CORPORATION, et al., Defendants.**

**No. 3:02 CV 212(GLG).**

United States District Court, D. Connecticut.

Sept. 6, 2002.

William B. Barnes, Rosenstein & Barnes, Fairfield, CT, J. Griffin Morgan, Robert M. Elliot, Elliot, Pishko, Morgan, Winston Salem, NC, for plaintiffs.

Barry J. Waters, Murtha Culina LLP, New Haven, Ct, Bruce M. Steen, McGuire, Woods, Battle & Boothe, Charlotte, NC, for Champion Int. Corp., Long Term Disability Benefits Plan for Salaried Emp. of Champion Int. Corp, #506, Long Term Disability Benefits Plan for Certain Hourly Emp. of Champion Int. Corp, #703, International Paper Co., defendants.

Anthony M. Fitzgerald, Howard K. Levine, Carmody & Torrance, New Haven, CT, James T. Finnigan, Rich May, Boston, MA, for Core, Inc., defendant.

## MEMORANDUM DECISION

GOETTEL, District Judge.

Plaintiffs are former employees of Champion International Corporation ("Champion") and have brought this action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, against Champion, CORE, INC., Champion's two long-term disability ("LTD") benefits plans, and International Paper Company.

Defendant CORE, INC. (hereinafter "CORE" or "defendant") has moved for summary judgment [Doc. # 11] on the ground that there are no genuine issues of material fact and that CORE is entitled to judgment as a matter of law. For the reasons set forth below, defendant's motion is GRANTED.

### Summary Judgment Standard

A motion for summary judgment may not be granted unless the Court determines that there is no genuine issue of material fact to be tried and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). An issue is "genuine" if there is sufficient evidence such that a reasonable jury could return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" if it may affect the outcome of the suit under governing law. *Id.*

The burden of demonstrating the absence of a genuine dispute as to a material fact rests with the party seeking summary judgment, in this case defendant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Defendant must identify those portions of the pleadings, depositions, answers to inter-

rogatories, admissions, and/or affidavits which they believe demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Since defendant will not have the burden of proof at trial on plaintiff's claim, it can meet its summary judgment obligation by pointing the court to the absence of evidence to support the claim. *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548.

In order to avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion must come forward with extrinsic evidence, i.e., affidavits, depositions, answers to interrogatories, and/or admissions, which are sufficient to establish the existence of the essential elements to that party's case, and the elements on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. The nonmovant, plaintiffs, "must do more than present evidence that is merely colorable, conclusory, or speculative and must present 'concrete evidence from which a reasonable juror could return a verdict in [their] favor ...'" *Alteri v. General Motors Corp.*, 919 F.Supp. 92, 94–95 (N.D.N.Y.1996) (quoting *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505).

In assessing the record to determine whether there are any genuine issues of material fact, the Court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought. *McLee v. Chrysler Corp.*, 109 F.3d 130, 134 (2d Cir.1997).

Accordingly, we set forth the facts in the light most favorable to plaintiffs.

### Facts

The Court accepts the following facts as true, except where noted, for the purposes of defendant's motion for summary judgment.

Plaintiffs are fourteen disabled former employees of Champion. (Compl.¶ 4.) Champion is a corporation organized under New York law. (Compl.¶ 5.) Until May 2000, Champion was engaged in the paper manufacturing business, and was located in Greenwich, Connecticut. (Compl.¶ 5.)

Defendant International Paper Company is a New York corporation with its principal place of business in Stamford, Connecticut. (Compl.¶ 8.) In May 2000, International Paper acquired Champion's stock and assets through a merger agreement. (Compl.¶¶ 5, 8.)

Champion had two self-funded long-term disability benefits plans (hereinafter referred to as "the LTD Plans" or "the Plans"), one for salaried employees, and one for hourly employees. (Compl.¶¶ 6–7, 10.)

From 1997 to 1999, Champion officials explored the possibility of reducing costs throughout the company. Champion concluded that their implementation of the LTD Plans had become too costly because of the number of disabled participants. (Compl.¶¶ 17, 18.) Defendant CORE is a Massachusetts corporation with whom Champion contracted to obtain evidence and information to use in order to deny or terminate LTD benefits of disabled participants and so reduce and eliminate Champion's disability costs. (Compl.¶¶ 9, 20.) Defendant claims its services were designed to prevent employee absences, promote an employee's early return to work, improve productivity, and manage an employee's disabilities from the first day of disability leave through the employee's return to work or retirement, without compromising the quality of health care services provided to employees. (Bernstein Aff. ¶ 2.)

Effective January 1, 1996, CORE and Champion entered into a Services Agreement. (Bernstein Aff. ¶ 3.) The Services Agreement provided, *inter alia*, (1) that Champion would retain full and sole authority and responsibility for determining who was eligible to receive benefits and the amount of benefits to be paid under any plan sponsored by Champion; (2) that CORE would make written recommendations to Champion concerning employees' eligibility for benefit payments; (3) that CORE would have no responsibility for any benefit or medical care decisions; (4) that CORE would not be deemed to be the "appropriate named fiduciary" as defined by ERISA or have any other fiduciary duties under ERISA as a result of the Services Agreement. (Bernstein Aff., Ex. A.)

CORE, Champion, and Sedgwick Claims Management Services, Inc. ("Sedgwick") entered into a Services Agreement through which CORE and Sedgwick provided managed disability and health care benefits management services to Champion. (Bernstein Aff., Ex. B.) The new Services Agreement expressly provided that CORE did not have any authority to make benefit eligibility determinations.[1] (Bernstein Aff., Ex. B.)

From 1996 through 1999, CORE evaluated the claims of each plaintiff to determine whether his or her benefits should be terminated. (Compl.¶¶ 37, 53, 69, 85, 101, 117, 134, 150, 166, 181, 197, 212, 228, 244.) Plaintiffs allege that CORE improperly conducted its evaluations by:

—unfairly targeting plaintiffs for termination of benefits for reasons unrelated to their disabling conditions;

---

**1.** Champion terminated CORE's participation in the second Services Agreement as of December 31, 2000. (Bernstein Aff. ¶ 5.)

—selecting and hiring physicians who were biased and predisposed toward rendering opinions supporting the denial or termination of benefits;

—providing false and deceptive information to selected physicians to influence them to provide opinions supporting the denial or termination of benefits;

—failing to provide complete medical information to the physicians selected to re-examine plaintiffs;

—ignoring evidence from treating physicians which supported the continuing total disability status of plaintiffs;

—refusing to consider other evidence and information supporting the continuing total disability status of plaintiffs;

—failing to obtain independent vocational information to determine plaintiffs' actual work capacity and to determine the availability of jobs in the local economy to accommodate plaintiffs' various disabilities;

—failing to obtain additional information from plaintiffs necessary to conduct a full and fair review of each plaintiff's claim;

—failing to require evidence of a change in each plaintiff's condition as a prerequisite to any modification of a prior determination of total disability.

(Compl. ¶ 23.) As a result of these alleged actions, plaintiffs' benefits were terminated. (Compl. ¶ 24.) Plaintiffs exhausted all internal review procedures provided by the Plans. In each case, Champion upheld the recommendation to terminate the claimant's LTD benefits.

According to plaintiffs, CORE maintained a record of the "savings" it netted for Champion and International and has used this information to promote and market its services to other companies. (Compl. ¶ 25.)

### Discussion

Plaintiffs have asserted claims against CORE alleging violations of ERISA §§ 1133 and 1104. Defendant argues that plaintiffs' claims are untenable as a matter of law because CORE was not a fiduciary under either of the LTD Plans and because there is no private right of action under those sections of ERISA.

### 1. *Breach of fiduciary duty claim*

ERISA establishes standards by which fiduciaries exercise their authority in administering and implementing terms of ERISA plans. 29 U.S.C. § 1104. The Supreme Court held that ERISA authorizes ERISA plan beneficiaries to bring a lawsuit seeking relief for individual beneficiaries harmed by an administrator's breach of its fiduciary obligations. *Varity Corp. v. Howe,* 516 U.S. 489, 492, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996). ERISA requires that a written instrument govern each ERISA plan and that such instrument "shall provide for one or more named fiduciaries who jointly or severally shall have authority to control the operation and administration of the plan." 29 U.S.C. § 1102(a)(1). Moreover, the "named fiduciary" is a person "who is named in the plan instrument, or who, pursuant to a procedure specified in the plan, is identified as a fiduciary [ ] by a person who is an employer or employee organization with respect to the plan...." 29 U.S.C. § 1102(a)(2).

In the Second Circuit, only the plan itself, or the administrator and trustees of the plan may be held liable in a recovery of benefits claim such as this one. *Leonelli v. Pennwalt Corp.,* 887 F.2d 1195, 1199 (2d Cir.1989) (also holding that because two of the defendants did not have any discretionary authority regarding a pension plan, they were not fiduciaries of the plan as defined by ERISA). Plaintiffs concede that the Champion Pension and Employee Benefits Committee was the named fiduciary and administrator of the LTD Plans.

(Compl.¶ 13.) Plaintiffs also concede that it was Champion that terminated their LTD benefits and Champion that denied their appeals. (Compl.¶¶ 39, 40, 55, 56, 71, 72, 87, 88, 103, 104, 119, 120, 136, 137, 152, 153, 167, 168, 183, 184, 198, 199, 214, 215, 230, 231, 246, 247.) Despite these concessions, plaintiffs argue that defendant did indeed carry out discretionary responsibilities with respect to each plaintiff's claim. The only evidence provided in support of this allegation are letters from CORE advising several of the plaintiffs that CORE was "unable to approve [their] disability." (*See, e.g.,* Elliott Aff., Att. C.)

As defendant points out, even an entity's authority to make decisions about eligibility for coverage and benefits is insufficient to elevate its status to that of fiduciary. *See, e.g., Geller v. County Line Auto Sales, Inc.,* 86 F.3d 18, 21 (2d Cir.1996) (holding that persons performing purely ministerial functions are not fiduciaries; the performance of ministerial functions includes, inter alia, the determination of eligibility for participation or benefits); *Crocco v. Xerox Corp.,* 956 F.Supp. 129, 136 (D.Conn.1997) (holding that an entity providing medical review services to a plan was not a fiduciary where the entity did not have final authority to make eligibility determinations), *aff'd in relevant part,* 137 F.3d 105 (2d Cir.1998).

Plaintiffs point to various documents that they would have us believe indicate that defendant had the authority to make final eligibility determinations. However, both Services Agreements between Champion and CORE make clear that ultimate authority remained in the hands of Champion. (Bernstein Aff., Exs. A, B.) Also, Section 2.1(z)(iv) of the LTD Plan provides that if there is a difference of opinion as to whether a participant is disabled, the Plan

Supervisor's decision is final and conclusive.[2] (Elliott Aff., Att. D.) Section 9.2 of the Plan provides that the Plan Supervisor, as the delegate of the Plan Administrator, has the power and authority to control and manage the operation and administration of the Plan, including but not limited to determining the amount and kind of benefits payable to any employee. (Elliott Aff., Att. C.) Finally, in the Services Agreements between Champion and CORE, the parties agreed that all determinations made by CORE were recommendations only. (Bernstein Aff., Ex. A.)

Even when viewing the facts in the light most favorable to plaintiffs, we find that plaintiffs have provided no evidence to support their allegations that CORE had discretionary authority under the LTD Plans such that it could be viewed as a fiduciary. Therefore, defendant cannot be sued under ERISA for breach of fiduciary duty. Accordingly, defendant's motion for summary judgment on the third claim is granted as to CORE.

### 2. *Violation of 29 U.S.C. § 1133*

■ Plaintiffs have also asserted a claim against CORE for violation of § 1133. That section provides, in pertinent part, that every *employee benefit plan* shall:

(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied . . . and

(2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133. Defendant correctly notes that § 1133 does not give rise to a

---

**2.** We are not quite sure from the record just who the Plan Supervisor was, but it is clear that it was *not* CORE.

private cause of action for compensatory or punitive relief. *Massachusetts Mutual Life Ins. Co. v. Russell,* 473 U.S. 134, 144, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985) (holding that a claimant may bring a civil action to challenge an outright denial of benefits but that the statute does not provide for compensatory or punitive relief). Plaintiffs state that they do not seek compensatory or punitive relief; instead, they ask the Court to grant injunctive or "other equitable relief." Indeed, the usual remedy for a violation of § 1133 would be equitable in nature, such as remanding plaintiffs' claims for benefits to the LTD Plans administrator or fiduciary for a "full and fair" review. However, since CORE was neither a plan administrator nor a fiduciary, and since defendant could obviously not provide the "full and fair review" required by the statute, CORE is not the proper party to sue for an alleged violation of § 1133. Accordingly, defendant's motion to dismiss plaintiffs' fourth claim is granted as to CORE.

### Conclusion

For the reasons set forth above, defendant's motion for summary judgment [Doc. # 11] on plaintiffs' third and fourth claims is GRANTED as to CORE.

SO ORDERED.